**BUTLER, FITZGERALD & POTTER, A Professional Corporation, Plaintiff,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, Defendant.**

No. 83 Civ. 4780 (ADS).

United States District Court, S.D. New York.

Oct. 11, 1983.

Butler, Fitzgerald & Potter, New York City (Raymond Fitzgerald, New York City, of counsel), pro se.

Feltman, Karesh & Major, New York City, for defendant; Donald F. Schneider, New York City, of counsel.

## OPINION AND ORDER

SOFAER, District Judge:

This is an action for a declaratory judgment as to the rights and obligations under a lease commenced by a law firm, Butler, Fitzgerald & Potter ("BF & P"), that rents office space as a sublessee from the defendant Westinghouse Electric Corporation ("Westinghouse") at 200 Park Avenue, New York City, the Pan Am Building. From the inception of the subtenancy in March 1976, through 1981, BF & P or its predecessor in interest paid all bills for escalation rent, including electric power escalation charges, without objection. When notified by Westinghouse in early 1982 of the increases due for the 1981 calendar year, plaintiff objected but paid under protest. When informed of further increases in early 1983, plaintiff refused to pay and deducted the increases for electric power demanded and paid by plaintiff since 1977 from a bill that covered escalation rent for other items as well. Defendants have counterclaimed for summary judgment and seek both a money judgment in the amount of all escalation rent due and owing by BF & P, and a declaratory judgment to the effect that BF & P is contractually obligated to continue to pay electrici-

ty escalation rent as payment becomes due. Defendant also seeks attorneys fees, under a lease provision which obligates BF & P to pay attorneys fees incurred by defendant in prosecuting its counterclaims, based on BF & P's default in payment of escalation rent. For the reasons that follow, the defendant's motion for summary judgment is granted, since there is no genuine issue of fact to be tried.

Westinghouse's lease with the landlord (the "Main Lease") provides for a flat rental fee, which includes electricity. Article 27.04(a) of the Main Lease provides:

> Landlord shall furnish to Tenant the electric energy which Tenant requires in the demised premises on a "rent inclusion" basis. There shall be no charge to Tenant therefor by way of measuring the same on any meter or otherwise, the total charge for electric current being included in the fixed annual rental set forth in this Lease . . .

Under this provision, defendant pays nothing extra for electricity beyond the rent regardless of how much electricity the defendant uses in a given month or year. The Main Lease also provides, however, a mechanism by which the landlord is able to pass on increases in electricity on a yearly basis. Article 28.03 of the Main Lease provides:

> (c) If in any lease year the Operating Rate for any of the foregoing items of operating expense [Electricity, Art. 28.-03(a)(iii)] shall be higher or lower than the Basic Operating Rate, the rent to be paid by Tenant shall be increased or decreased for such Lease Year by adding to or subtracting from the rent reserved in this lease for such Lease year _____% of the aggregate increased or decreased outlay of the landlord for [electricity] during such Lease year which is attributable to any increase or decrease of the Operating Rate.

In sum, this provision obligates Westinghouse to pay to landlord escalation rent for a specified portion of the increase in the cost of electricity over a base amount.

Westinghouse points out that its sublease with BF & P incorporates by reference all the terms and provisions of the Main Lease that are not specifically excluded. Paragraph 14 of the Sublease provides:

> Except for article 27.04(b), 29, 30, 32, 33 *and as may be provided herein to the contrary,* all agreements, covenants and conditions contained in the [Main] Lease between Lessor and Sublessor and with aforesaid Lease is by this reference incorporated herein, are hereby made a part of this agreement and such rights and obligations as are contained in the aforesaid lease are hereby imposed upon the respective parties hereto, [Westinghouse] being substituted for the Lessor, and [BF & P] being substituted for [Westinghouse]; provided, however, that [Westinghouse] shall not be liable for any defaults by the Lessor.

(Emphasis added.) No specific provision in this clause exempts the sublessee from electricity increases. Furthermore, another provision of the sublease, Paragraph 4, explicitly authorizes sublessor to bill sublessee for its pro rata share "of any increase in taxes and operating expenses," as defined in Article 28 of the main lease:

> Sublessor shall invoice Sublessee Sublessee's pro rate share of any increase in taxes and operating expenses, said taxes and operating expenses being a portion of the same taxes and operating expenses which Sublessor is required to reimburse Lessor with respect to such year under the provisions stipulated in Article 28 of said Base Lease.

Article 28.03(a)(iii) of the Main Lease explicitly includes electricity as one of several items of "operating expense." These provisions, defendant claims, unambiguously establish its right to pass on increases in electricity in the agreed proportion.

Plaintiff correctly notes that Paragraph 14 of the Sublease not only excludes certain specific obligations, but also excludes such terms of the Main Lease "as may be provided herein to the contrary. . . ." Plaintiff contends that the Sublease excludes a requirement that plaintiff pay electricity by providing in Paragraph 5(a) that "Subles-

sor's Landlord" will provide electricity to the Subtenant free of charge:

> Sublessor's Landlord shall furnish to Sublessee the electric energy which Sublesser requires in the subleased premises without charge.

This provision, plaintiff argues, unambiguously refutes the contention that defendant reserved the right to pass on increases for electricity.

Where the provisions of a contract are not susceptible of two fairly reasonable interpretations a court may look only to the four corners of the agreement and not to parol evidence to determine the intention of the parties. *Leslie Fay, Inc. v. Rich,* 478 F.Supp. 1109, 1113 (S.D.N.Y.1979); *see Tokio Marine & Fire Insur. Co. v. McDonnell Douglas Corp.,* 617 F.2d 936, 940 (2d Cir. 1980). In this case, neither side relies upon parol evidence in seeking a construction of the lease. If any such claim were made, moreover, it would necessarily fail, since the lease is fairly subject to only one interpretation on the issue presented. Based on the tenant's general plan of incorporating and passing on all increases in "expenses," and in light of at least three specific provisions in the sublease, the sublease was clearly intended to permit Westinghouse to pass on increases in electricity charges to BF & P, as subtenant, in the proportion indicated.

First, Paragraph 5(a) of the sublease provides that the "Landlord", not the tenant, will provide electricity free of charge. This cannot reasonably be claimed to have been a mistake, since a specific purpose was presumptively contemplated: to confer upon the tenant that degree of "free" electricity that the Main Lease landlord had agreed to furnish to the tenant Westinghouse. The provision thereby strongly suggests that the electricity would be as, but no more, "free" for the subtenant as it was for the main tenant. The same section in subparagraphs (b) & (c) entitles the tenant, in the event the landlord elects to discontinue furnishing electric energy due to such energy being made available from a public utility, to shift to some alternate power source to provide electric power, and furthermore permits the tenant-sublessor annually to increase charges from that alternate source proportionate to the increases in the cost of the power involved. This provision is also significant, in that it gives the tenant the power to pass on increases in electric costs insofar as the tenant takes on the obligation of providing electric power, thus suggesting that paragraph 5(a) was also intended to permit the tenant to pass on increases for electricity which the landlord could impose consistent with the landlord's obligation to provide electricity free of charge. Moreover, this construction is consistent with the many other provisions by which the tenant demonstrated its general plan to pass on to the plaintiff as subtenant its fair proportion of increases in all operating expenses. Finally, the sublease was construed and implemented in a manner consistent with the defendant's interpretation. Defendant consistently sought, and plaintiff consistently paid, increases for electricity in the proportion imposed on defendant by the landlord for a five year period. While plaintiff offers reasons for its failure to object, they do not undermine the value of the parties' consistent conduct, and fail under all the circumstances to create any ambiguity.

Defendant's motion for summary judgment is granted. Fed.R.Civ.P. 56. With regard to liability for attorney's fees, defendant should submit proof of attorney's fees within ten (10) days, plaintiff having five (5) days to respond.

SO ORDERED.