■ Giacomino Padovano et al., Appellants-Respondents, v Edeltraud Vivian et al., Respondents-Appellants, et al., Defendant. [629 NYS2d 844] —Casey, J. Cross appeals from a judgment of the Supreme Court (Klein, J.H.O.) in favor of plaintiffs, entered January 19, 1994 in Columbia County, upon a decision of the court.

Plaintiffs commenced this action to foreclose a mortgage they retained when they sold certain real property to defendants Edeltraud Vivian and Meir Fadida (hereinafter collectively referred to as defendants). The note and mortgage executed by defendants permitted them to offset against payments due to plaintiffs the cost of repairs to the septic system within one year. The contract for the sale of the property also provided that plaintiffs warrant that "the septic shall be placed in good working order and shall remain so for a period of one (1) year from the date of closing". Pursuant to the contract, plaintiffs also agreed to make the swimming pool on the property in good working order. Defendants' answer included counterclaims which sought to reduce the amount owed to plaintiffs by

the cost of replacing the septic system and to recover from plaintiffs the cost of installing a new swimming pool. After a nonjury trial, Supreme Court found that defendants had defaulted on the note and mortgage on which they owed $67,794.51. Supreme Court also found in favor of defendants on their counterclaim based upon replacement of the septic system, and, therefore, reduced defendants' obligation to plaintiffs by the $59,520 replacement cost. Defendants' remaining counterclaims, including those based upon the installation of a new swimming pool, were dismissed. Plaintiffs and defendants cross-appeal from the resulting judgment which awarded plaintiff $8,274.51.

Prior to the sale, plaintiffs learned that the septic system was in a state of failure and that replacement of the existing system with a sand filter system was required. Based upon the advice of an engineer, plaintiffs elected to modify the existing system as a temporary measure to keep the system in operation until a sand filter could be installed. Defendants were informed of a problem with the septic system and plaintiffs' intent to make repairs, although defendants claim they did not know the extent of the problem. Plaintiffs made the repairs shortly after closing, but evidence in the record establishes that the remedial measures were ineffective to correct the malfunctioning septic system. Approximately eight months after the closing, the Columbia County Department of Health informed defendants that the system was unsatisfactory and had to be replaced.

Plaintiffs contend that their agreement to warrant the good working order of the septic system did not encompass replacement of the system. According to plaintiffs, the phrase "good working order" is ambiguous and Supreme Court erred in failing to permit the introduction of extrinsic evidence to establish the meaning of the phrase. Plaintiffs claim that because the toilets continued to flush and waste was discharged from the building, the septic system was in good working order within the meaning of the contract.

We see no ambiguity in the phrase "good working order" and extrinsic evidence cannot be used to create an ambiguity (see, Bruni v County of Otsego, 192 AD2d 939, 942). Extrinsic evidence of plaintiffs' uncommunicated subjective intent is irrelevant in any event (see, Hudson-Port Ewen Assocs. v Chien Kuo, 165 AD2d 301, affd 78 NY2d 944). Giving the words their plain and ordinary meaning (see, Sanabria v American Home Assur. Co., 68 NY2d 866), the contract requires that the septic system be operational and adequately performing its intended

function. We agree with plaintiffs that the contract does not require them to upgrade a septic system that is already operational and adequately performing its intended function. We disagree, however, with plaintiffs' claim that a septic system is necessarily in good working order if the toilets flush and waste is discharged from the building. The obvious function of a septic system is not merely to permit the toilets to flush, but to dispose of the waste in a safe and sanitary manner which does not create a health hazard. No rational interpretation of the phrase "good working order" would encompass a failed septic system, regardless of whether the toilets flush.

It is undisputed that the septic system was in a state of failure prior to closing. It is also undisputed that plaintiffs made certain modifications to the system which, according to plaintiffs, were intended to temporarily return the system to an operational state. The evidence in the record, however, supports the conclusion that plaintiffs' remedial efforts were ineffectual. One of the defendants testified that he saw raw sewage on the surface of the leach field shortly after the remedial efforts were completed. The Department of Health considered the system still to be in a state of failure after the remedial efforts were completed. Defendants' expert found ample evidence of a failed system when he inspected it. Accordingly, the evidence supports the conclusion that the septic system was not in good working order during the one-year period after closing.

We reject plaintiffs' claim that the contract does not require replacement of the septic system. They agreed to place the septic system in good working order and warranted that it would remain so for one year. Such an agreement clearly encompasses replacement of the failed septic system during the one-year period if replacement is necessary to place the system in good working order. There is no evidence in the record that any remedial measure other than replacement would place the failed system in good working order. Accordingly, we see no basis to disturb Supreme Court's finding that plaintiffs are responsible for the cost of replacing the failed septic system.

The cross appeal concerns Supreme Court's dismissal of defendants' counterclaim which seeks the cost of installing a new swimming pool. In contrast to the provision concerning the septic system, plaintiffs did not warrant the good working order of the swimming pool for any period of time. Rather, they agreed only that, within 15 days of closing, the pool would be in good working order and in a condition available for use to the patrons of the motel located on the property. Although defendants ultimately installed a new pool because of alleged

defects in the old one, the evidence is insufficient to establish that plaintiffs breached their agreement regarding the pool. Plaintiffs replaced the pump and chlorinator for the pool shortly after closing, and the pool was used during the summer months after closing. Defendants' claim that the pool was not safe is belied by the fact that they permitted their patrons to use it, and the Department of Health did not order the pool closed. Accordingly, the judgment should be affirmed in its entirety.

Mikoll, J. P., Crew III, Yesawich Jr. and Spain, JJ., concur. Ordered that the judgment is affirmed, without costs.