■ FINCH, PRUYN & COMPANY, INC., Appellant, v M. WILSON CONTROL SERVICES, INC., Respondent-Appellant, and MLB INDUSTRIES, INC., Respondent. [658 NYS2d 496] —Cardona, P. J. Appeal from an order of the Supreme Court (Dier, J.), entered August 30, 1996 in Warren County, which denied plaintiff's motion for partial summary judgment and a cross motion by defendant M. Wilson Control Services, Inc. for common-law indemnification.

Plaintiff is a forest products company engaged in the business of the manufacture and sale of paper and wood byproducts with a manufacturing facility (hereinafter the facility) in the City of Glens Falls, Warren County. In June 1991, plaintiff entered into a contract with defendant M. Wilson Control Services, Inc. (hereinafter Wilson), an electrical

contractor, pursuant to which Wilson was to remove and replace a transformer at one of the facility's power plant substations (hereinafter the substation). The contract obligated Wilson to provide the supervision, labor and materials required to complete the job in accordance with the original plans and technical specifications. Pursuant to the specifications, the pre-installation work for the new transformer had to be performed while the existing substation transformer remained energized so that the daily operations of the facility would not be affected.

Thereafter, Wilson entered into a subcontract agreement with defendant MLB Industries, Inc. (hereinafter MLB) to perform certain nonelectrical work, including, *inter alia*, enlargement of the existing concrete slab to accommodate the new transformer. Work performed under the subcontract agreement was also required to be in compliance with the specifications. On August 22, 1991, Edgar Carpenter, an MLB employee, was fabricating the reinforcing grid for the new concrete pad. While he was handling a 13-foot steel reinforcing rod, one end touched an exposed copper ground wire at a time when the rod's other end was sufficiently close to the overhead bus of the energized substation transformer causing a 34,500-volt charge of electricity to "arc" or jump from the transformer through the rod and the grounding wire into the ground. The incident caused a facility-wide power outage which disrupted the facility's manufacturing operation.

Subsequently, plaintiff commenced this action against Wilson and MLB, alleging negligence and breach of contract and seeking property damages and economic loss in excess of $219,000. Wilson and MLB cross-claimed against each other for indemnification. Following discovery, plaintiff moved for partial summary judgment against Wilson and MLB (hereinafter collectively referred to as defendants) on the breach of contract cause of action. Wilson cross-moved for summary judgment on the issue of indemnification from MLB. Supreme Court denied both motions. Plaintiff and Wilson appeal.

Initially, we reject MLB's contention that Supreme Court erred when it determined that plaintiff was the intended beneficiary of MLB's subcontract agreement with Wilson and, therefore, could maintain this breach of contract action against MLB for property damages and losses.[1] We note that the identity of a third-party beneficiary need not be specifically set

---

1. Plaintiff's contention that MLB was required to file a cross appeal lacks merit. Having obtained an order in its favor denying plaintiff's motion for partial summary judgment, MLB was not aggrieved by it (*see,* CPLR

forth in a contract (see, *Newin Corp. v Hartford Acc. & Indem. Co.*, 37 NY2d 211, 218-219; *State of New York v American Mfrs. Mut. Ins. Co.*, 188 AD2d 152, 155). Here, the subcontract necessarily required MLB to directly perform services at plaintiff's facility for Wilson in order to satisfy Wilson's obligations to plaintiff. Such circumstances evidence a clear intent by Wilson, as promisee, " 'to give [plaintiff] the benefit of the promised performance' " (*Fourth Ocean Putnam Corp. v Interstate Wrecking Co.*, 66 NY2d 38, 44, quoting Restatement [Second] of Contracts § 302 [2]; *see, Goodman-Marks Assocs. v Westbury Post Assocs.*, 70 AD2d 145, 148). Thus, we agree with Supreme Court that plaintiff was the intended beneficiary of the subcontract between Wilson and MLB.

We next turn to the merits of plaintiff's contentions. Plaintiff, noting that the contract required defendants to perform their work without affecting plaintiff's daily operations, argues that sections 16026 (a) and 16034 (b) and (c) of the contract specifications[2] plainly and unambiguously placed the sole responsibility of ensuring the safety of property at the construction site upon defendants, as contractors.[3] Plaintiff also points out that the specifications required defendants to perform the work in strict compliance with, *inter alia*, the State Department of Labor Industrial Code (*see,* 12 NYCRR ch I, subch A), which, in order to protect against electric shock, prohibits an employee from working in close proximity to any part of an electric power circuit unless the employer has first either "de-energiz[ed] the circuit and ground[ed] it or * * * guard[ed] such circuit by effective insulation or other means"

---

5511) and therefore had no need, or right, to appeal (*see, Parochial Bus Sys. v Board of Educ.*, 60 NY2d 539, 544-545). Nevertheless, MLB was entitled to seek review of this alleged error in the instant appeal because it was properly preserved and would, if corrected, support a judgment in its favor dismissing plaintiff's complaint (*see, id.,* at 545-546; *Matter of Padwee v Lustenberger*, 226 AD2d 897, 899, n).

2. Section 16026 (a) obligates the contractor to: "1. Provide approved protection for all work and property against damage, injury, loss, etc., until testing and final acceptance."

Section 16034 (b) provides, in relevant part, as follows: "In accordance with generally accepted construction practices, the Contractor will be solely and completely responsible for conditions of the job site, including safety of all persons and property during performance of the work."

Section 16034 (c) provides: "The duty of the Engineer to conduct construction review of the Contractor's performance is not intended to include review of the adequacy of the Contractor's safety measures, in, on or near the construction site."

3. The specifications define a "contractor" as "the person, firm or corporation performing the work called for in this Electrical Specification, whether they be prime or sub".

(12 NYCRR 23-1.13 [b] [4]). Defendants were also required to comply with the Occupational Safety and Health Administration Act (hereinafter OSHA; *see,* 29 CFR subtit B), which also requires an employer to take precautionary measures to minimize the hazard of electric shock (*see,* 29 CFR 1910.333 [a] [2]; [c] [6]).

Notably, Carpenter testified at his examination before trial that, although MLB employees had been warned not to use metal tape measures and not to raise anything over their heads while working near the transformer, he had not been instructed regarding movement of the reenforcement rod around the grounding grid. There was also uncontroverted evidence that the existing energized transformer had no insulation covering it at the time of the accident, despite the fact that Wilson possessed an insulating blanket. The evidence further indicated that Wilson did not have a supervisor on the job at the time of this incident. In our view, plaintiff's proof was sufficient to entitle it to summary judgment, as a matter of law, on the issue of defendants' liability for breach of their contractual duties to comply with pertinent safety regulations, to provide approved protection for plaintiff's property against damage and loss, and to perform work without affecting plaintiff's daily operations (*see,* CPLR 3212; *see also, Zuckerman v City of New York,* 49 NY2d 557, 562). In opposing summary judgment, defendants argued that certain contract "ambiguities" and the deposition testimony of Wilson's representative, Michael Wilson, raise triable issues as to who had control over the means and methods by which the work was to be performed and, thus, who had ultimate responsibility for safety at the construction site.

It is now well settled that " 'extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face' " (*W.W.W. Assocs. v Giancontieri,* 77 NY2d 157, 163, quoting *Intercontinental Planning v Daystrom, Inc.,* 24 NY2d 372, 379; *see, Bast Hatfield v General Elec. Co.,* 229 AD2d 892, 894; *Padovano v Vivian,* 217 AD2d 868, 869). Therefore, before we consider defendants' parol evidence, we must first determine whether the specifications, by clear and unambiguous language, demonstrate that defendants were *solely* responsible for jobsite safety and, consequently, the resulting power outage. Defendants point to contract language obligating them to provide *approved* protection for all work and property and contend that the approval required was from plaintiff, demonstrating that plaintiff also had control over job-site safety. We

take judicial notice that the Industrial Code defines an "approved" device, material or method as one that complies with "a subsisting resolution of approval [either general or specific] adopted *by the [State Board of Standards and Appeals]*" (12 NYCRR 23-1.4 [b] [3] [emphasis supplied]). Nevertheless, the specifications do not state whose approval was required. Inasmuch as that term is reasonably susceptible of more than one interpretation (*see, Chimart Assocs. v Paul*, 66 NY2d 570, 572), we may consider extrinsic and parol evidence pertaining to the degree of plaintiff's control.

Defendants' evidence establishes that plaintiff's project engineer was involved in many aspects of the project's completion, including approval of work equipment and methodology, supervision and management of the job site. As to safety, plaintiff's manager of maintenance services, John Granger, whose primary responsibility was the electrical distribution system, testified that safety concerns regarding, *inter alia*, energized transformers, voltage levels and exposed metal conductors had been discussed at a pre-bid meeting between plaintiff and the contractors. Michael Wilson testified that plaintiff directed how the project was to be handled regarding safety and that it was his understanding that the safety aspects of the project were to be overseen by plaintiff's safety coordinator. Granger also testified that he reviewed the job's progress daily, including physically visiting the substation site, and that he had not complained either to Wilson's foreman or anyone from MLB regarding job-site safety prior to the incident. Finally, it was plaintiff's decision to complete all pre-shutdown work while the transformer remained energized. We find this evidence sufficient to raise a triable issue (*see, Zuckerman v City of New York*, 49 NY2d 557, 562, *supra*) of whether plaintiff, despite the language of the specifications, retained some responsibility for the project's safety and, therefore, conclude that Supreme Court properly denied plaintiff's motion.

We also find that Supreme Court properly denied Wilson's cross motion for summary judgment on its claim for common-law indemnification against MLB. "One is entitled to implied indemnification where he or she has committed no wrong but is held vicariously liable for the wrongdoing of another" (*Kozerski v Deer Run Homeowners Assn.*, 217 AD2d 841, 843; *see, State of New York Facilities Dev. Corp. v Kallman & McKinnell, Russo & Sonder*, 121 AD2d 805, 806). Although Wilson contends that its liability to plaintiff is contractual and that there is no proof of any active negligence on its part, MLB has come forward with sufficient evidentiary proof to create an is-

sue of fact regarding Wilson's negligence. As the electrical contractor, Wilson had a specialized knowledge of the dangers posed by working in close proximity to an energized transformer. However, no one from Wilson ever advised MLB about these dangers. Furthermore, as already noted, at the time of the accident, Wilson possessed nonconductive protective blankets which could have been placed on the overhead bus of the transformer to minimize the existing dangers. Accordingly, Wilson's cross motion was properly denied.

Mercure, White, Spain and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs.