**Robert J. GUILD and G & G Service, Inc., Plaintiffs,**

v.

**EXXON CORPORATION, Defendant.**

**Exxon Corporation, Third Party Plaintiff,**

v.

**L. Mangione Construction Co., Inc., Third Party Defendant.**

**No. 3:96CV2515(WWE).**

United States District Court, D. Connecticut.

Dec. 28, 1999.

Douglas B. Thayer, Law Office of Douglas B. Thayer, Pleasant Grove, UT, Urs Broderick Furrer, Harriton & Mignano, Tarrytown, NY, for Plaintiffs.

Keith S. Harriton, Urs Broderick Furrer, Harriton & Mignano, Tarrytown, NY, Mark J. Zimmermann, Updike, Kelly & Spellacy. P.C., Hartford, CT, Joseph A. Rosenthal, Updike, Kelly & Spellacy, P.C., New Haven, CT, for Defendants.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiffs, Robert Guild and G & G Service, bring this action against the defendant, Exxon Corporation, alleging breach of contract, breach of implied covenant of good faith, tortious interference, and a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), arising out of the sale of an environmentally contaminated service station. In turn, Exxon Corporation impleads Mangione Construction Company, alleging negligence, breach of contract and breach of warranty arising out of the contract for the removal of petroleum tanks from the premises of the Exxon owned service station. Jurisdiction in this case is predicated on diversity.

Pending before this Court is: (1) Defendant Exxon's motion for summary judgment [Doc. # 70]; and (2) Third party defendant Mangione's motion for summary judgment [Doc. # 67]. For the reasons set forth below, Exxon's motion will be granted, and Mangione's motion will be denied as moot.

## FACTS

Exxon Corporation owned a gasoline service station located at 195 Merrow Road, Tolland, Connecticut. Plaintiff G & G operated it under a lease agreement as an approved Exxon Dealer. At all the relevant times, plaintiff Guild was the owner of G & G.

In 1992, G & G Service agreed to purchase the station from Exxon. On September 22, 1992, G & G executed a Contract of Sale for the service station and the premises. In the contract, the parties agreed that:

> In no event shall seller have any liability to anyone whosoever including Purchaser, his successors, assigns, tenants, or users for business disruption or any other damage, injury or loss whatsoever.

> This writing is intended to be the final complete, and exclusive statement of this agreement. There are no oral understandings, representations or warranties affecting it.

In connection with the purchase of the station, G & G requested the removal of petroleum product storage tanks existing on the station premises. Exxon and the third party, Mangione, entered into a contract for the removal of the underground storage tanks.

On August 5, 1993, in anticipation of the removal of the tanks, Exxon and G & G entered into an Open Hole Letter Agreement, which stated:

> You [G & G] agree to an do release, indemnify and hold Exxon harmless

*from and against any and all claims, damages, expenses, personal injuries (including death), and/or other liabilities in any way resulting from or related to the subjects hereof after Exxon's tanks are removed, including, without limitation, those arising from or related to the removal of Exxon's tanks, the creation, or the existence of the excavated area, and/or the subsequent installation of other tanks and lines.*

On September 24, 1993, the parties incorporated a rider into the station purchase contract containing a clause that indemnified G & G for ten years from third party claims due to Exxon's negligence.

On November 17, 1993, Mangione began removing the tanks from the premises. During excavation and removal, three of the five tanks fractured into pieces. One of the three released a mixture of hydrocarbons, water and other residues ("sludge") into the excavated ground, mixing with the local groundwater.

Upon learning of the discharge, Exxon and its environmental consultant, Unico Environmental, notified the Connecticut Department of Environmental Protection and removed the sludge, the contaminated soil, and over 150,000 gallons of groundwater from the premises. All costs incurred in connection with the cleanup of the premises were paid by Exxon.

The purchase of the station took place on December 3, 1993, with the execution of a Special Warranty Deed providing that:

*Grantor reserves the right of access to the property, at no cost to Grantor, as Grantor and/or Grantor's employees, agents, and contractors may require for any activity deemed necessary or appropriate by Grantor to carry out any testing or remediation which Grantor may choose to undertake, or which may be required by any governmental agency having jurisdiction over the environmental condition of the Property.*

*As further consideration for the conveyance, Grantee does hereby remise, re-lease and forever discharge Grantor, its representatives, successors and assigns, from any and all claims, demands, liabilities and causes of action, at law or in equity, including, but not limited to, any statutory causes of actions . . . .*

Plaintiffs allege that as of December 3, 1993, Exxon had not completed the cleanup of the petroleum accident and the installation of new tanks. Furthermore, the plaintiffs claim that Exxon made oral representations as to the amount of time that cleanup would take. Such representations allegedly induced G & G to close on the contract for the sale of the station, but were not honored. As a result of the alleged delay in the start-up of the new gasoline service station, G & G claims it suffered financial losses.

### DISCUSSION

Summary judgment pursuant to Fed. R.Civ.P. 56(c) is appropriate if the court finds, after viewing the facts in the light most favorable to the nonmoving party, that there is no genuine issue of material fact pertaining to a given issue and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The burden is on the moving party to show that no material facts are in dispute. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). A dispute over a material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). The court's role in considering summary judgment is not to resolve disputed issues, but only to determine the existence of factual issues to be tried. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986).

In the context of a motion for summary judgment, disputed issues of fact are not

material if the moving party would be entitled to judgment as a matter of law, even if the disputed issues were resolved in favor of the nonmoving party. Such factual disputes, however genuine, are not material, and their presence will not preclude summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992).

## I. Exxon's Motion for Summary Judgment

### A. *Terms of the Contract*

■ Defendant Exxon moves this Court for summary judgment, asserting that each cause of action is barred by the unambiguous language of the contractual agreement entered into by G & G and Exxon.[1] This Court agrees.

■ In an action on a contract, the language of the contract controls and is enforced where the terms and conditions of the contractual agreement are "wholly unambiguous." *Wards Co., Inc. v. Stamford Ridgeway Associates*, 761 F.2d 117 (2d Cir.1985). Terms of a contract are wholly unambiguous when the contractual language is not susceptible to at least two fairly reasonable meanings. *In the Matter of Robertson Class Plaintiffs*, 479 F.Supp. 657 (S.D.N.Y.1979). If an examination of the contract language alone reveals a plain and distinct meaning, the Court should not resort to other methods of discerning meaning but should enforce the legal relations as described by the meaning attributed to the contract. *Butler Fitzgerald &*

*Potter v. Westinghouse Electric Corporation*, 571 F.Supp. 1258 (S.D.N.Y.1983).

■ On September 22, 1992, August 5, 1993, September 24, 1993, and December 3, 1993, G & G and Exxon entered into agreements for the sale of the service station and removal of the petroleum tanks which contained clauses that released Exxon from any and all claims at law or in equity, including, but not limited to, any statutory causes of action. Therefore, absent statutory prohibition, the release language bars the instant action.

### B. *Connecticut General Statutes Section 52–572k*

Plaintiffs argue that Conn.Gen.Stat. Section 52–572k(a)[2] invalidates the contracts' hold harmless clauses as violations of public policy. This Court finds Conn.Gen.Stat. Section 52–572k(a) inapplicable to the contractual agreements at issue in light of the plaintiffs' claims.

There are three requirements for Section 52–572k to be applicable: (1) the "hold harmless" clause must arise out of a construction contract; (2) the contract must purport to hold the promisee harmless for damages arising out of bodily injury to persons or damages to property; and (3) the damages must be caused by or result from the sole negligence of the promisee. The purpose of the statute is to nullify any provision in "construction contracts" which grants immunity to either party for acts of negligence. *House of Representatives Proceedings*, 1997, Volume 20, Part 10

---

1. Exxon also asserts that plaintiff Guild lacks standing individually as to each cause of action because he was not a party to the contract. This Court agrees. Guild is not party to the contract between Exxon and G & G. Furthermore, as a shareholder, Guild does not acquire standing to maintain an action in his own right when the alleged injury is inflicted upon the corporation G & G. *See Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727 (3rd Cir.1970).

2. Conn.Gen.Stat. Section 52–572(k) provides in relevant part:

*any covenant, promise, agreement or understanding entered into in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of any building, structure or appurtenance thereto including moving, demolition, and excavating connected therewith, that purports to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damages to property caused by or resulting from the sole negligence of such promisee, his agents or employees, is against public policy and void . . . .*

3864–4326, page 4298. Where negligence is concerned a party cannot by contract relieve itself of such liability. *Comind, Companhia de Seguros v. Sikorsky Aircraft, et al,* 116 F.R.D. 397, 420 (D.Conn. 1987) *(citing Rodriguez v. Gilbertie,* 33 Conn.Supp. 583, 363 A.2d 759 (1976)).

Conn.Gen.Stat. Section 52–572k is not applicable to this case because G & G does not meet the third prong of the test. This case sounds in contract, not negligence. The "hold harmless" clauses are not being used to hold Exxon harmless for its sole negligence because G & G did not plead a cause of action in negligence. G & G pleads breach of contract, tortious interference, breach of implied covenant of good faith, and a violation of CUTPA.[3] Plaintiff has not cited any cases, and the Court is not aware of any, that invalidate a "hold harmless" clause in a construction contract where the underlying claim is solely breach of contract and not negligence. *See Fire Systems, Inc. v. Semac Electrical,* 1998 WL 376344 (Conn.Super.); *See also Mitchell v. Madison Enterprises of Connecticut, Inc.,* 1997 WL 297725 (Conn.Super.1997) (Plaintiffs brought claims sounding in negligence). As the "hold harmless" clause does not indemnify or hold Exxon harmless for its sole negligence, summary judgment must be granted.

## II. Mangione's Motion for Summary Judgment against Exxon

Exxon's Third–Party Complaint seeks indemnification from, and apportionment with, Mangione in the event that a judgment or verdict is rendered against Exxon. Third-party defendant Mangione moves for summary judgment against Exxon, asserting rights under an agreement executed between Exxon and Mangione that releases third party defendant from all causes of actions, damages and judgments except for claims or actions for indemnifi-

cation. Since this Court has granted summary judgment in favor of Exxon, it need not consider the issue of indemnification and apportionment for the alleged negligence of Mangione.

## CONCLUSION

For the reasons stated above, defendant Exxon's Motion for Summary Judgment [Doc.# 70] is GRANTED, and Mangione's Motion for Summary Judgment [Doc.# 67] is DENIED as Moot. The clerk is ordered to enter judgment in favor of the defendant and close this case.

---

3. Plaintiffs' brief is replete with allegations of negligence by Exxon. Construing such allegations as an attempt to replead its complaint, this Court notes that G & G may not

now plead a cause of action in negligence against Exxon because the statute of limitations has run. *See* Conn.GenStat. Section 52–584.