Barbara COSTIN, Plaintiff

v.

BHANDARI CONSTRUCTORS & CON-SULTANTS, INC., J. Kokolakis Contracting, Inc., Anthracite Window Corp., and Tip Top General Contracting Corp., Defendants

Bhandari Constructors & Consultants, Inc., Third–Party Plaintiff,

v.

Anthracite Window Corp., Tip Top General Contracting Corp., and United States Fidelity & Guaranty Company, Third–Party Defendants

No. CIVA3:00CV2077 (JCH).

United States District Court, D. Connecticut.

Sept. 30, 2003.

[redacted]

RULING ON THIRD–PARTY DEFENDANT UNITED STATES FIDELITY & GUARANTY COMPANY'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86] AND THIRD–PARTY DEFENDANT TIP TOP GENERAL CONTRACTING & GUARANTY COMPANY'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 89] AND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT [DKT. NO. 101]

HALL, District Judge.

Plaintiff Barbara Costin filed this personal injury action sounding in negligence in Connecticut Superior Court for injuries she sustained on January 15, 1999. Her injuries were the result of her being struck when one or more ceiling tiles fell on her while she was walking in a corridor on the second floor of a building at the Connecticut Veterans Administration Medical Center in West Haven ("VA hospital") that was undergoing renovations ("the project"). Costin named as defendants several construction companies that were allegedly performing construction work on the project when the accident. These defendants now include: Bhandari Constructors & Consultants, Inc. ("Bhandari"), the general contractor at the site; J. Kokolakis Contracting, Inc. ("Kokolakis"), a roofing subcontractor hired by Bhandari; Anthracite Window Corporation ("Anthracite"), another Bhandari subcontractor; and Tip Top General Contracting Corporation ("Tip Top"). *See* Amended Complaint [Dkt. No. 16].[1] Tip Top was hired to work on the project as a replacement subcontractor by United States Fidelity & Guaranty Company ("USF & G")[2], after Bhandari declared Anthracite to be in default of its subcontract and demanded that USF & G, as Bhandari's surety, complete the remaining work.

Kokolakis removed the case to this court, alleging federal diversity jurisdiction pursuant to 28 U.S.C. § 1441. Bhandari then filed a third-party complaint [Dkt. No. 17] ("Third–Party Complaint" or "Complaint") against co-defendants Anthracite and Tip Top and also against USF & G. In its Third–Party Complaint, Bhandari pleads two counts against USF & G. The Third Count alleges that USF & G has a contractual duty to indemnify Bhandari based on its performance bond with Bhandari with respect to the subcontract between Anthracite and Bhandari. The

1. Costin's claims against yet another defendant, Miami Wall Systems, Inc., were dismissed in a ruling by this court dated September 12, 2000 [Dkt. No. 44].

2. USF & G is a corporation engaged in underwriting and issuing surety bonds that had issued a performance bond guaranteeing the performance of Anthracite pursuant to its subcontract with Bhandari.

Fourth Count of the Third–Party Complaint alleges that USF & G has an implied duty to indemnify Bhandari. Similarly, in its Fifth Count against Tip Top, Bhandari claims that Tip Top is impliedly obligated to indemnify Bhandari pursuant to a contract between Tip Top and USF & G and under state common law. Third-party Defendants USF & G and Anthracite in turn have asserted crossclaims against Tip Top based on theories of implied indemnity and, in the case of USF & G, contractual indemnity as well.

In its capacity as third-party defendant, USF & G now moves for summary judgment with respect to the Third and the Fourth Counts of Bhandari's Third–Party Complaint. *See* Third Party Defendant United States Fidelity & Guaranty Co.'s Motion for Summary Judgment [Dkt. No. 86]. Relying on USF & G's motion, third-party defendant Tip Top has filed a supplemental motion for summary judgment with respect to Bhandari's third-party implied indemnity claim. *See* Third–Party Defendant Tip Top General Contracting & Guaranty Company's Supplemental Motion for Summary Judgment [Dkt. No.101]. In a separate motion, Tip Top also moves for summary judgment with respect to USF & G's claim for contractual indemnity and the implied indemnification claims brought by USF & G, Bhandari, and Anthracite. *See* Third–Party Defendant Tip Top General Contracting & Guaranty Company's Motion for Summary Judgment [Dkt. No. 89]. In the same motion, Tip Top argues that summary judgment should enter in its favor on all the claims asserted against it due to the parties' failure to disclose an expert. *See id.* For the reasons stated below, the court denies each of these motions for summary judgment.

## I. FACTS [3]

The VA hospital hired Bhandari to serve as general contractor on a renovation project involving its Building No. 2. USF & G issued a performance bond guaranteeing the performance of Anthracite, one of several subcontractors retained by Bhandari to work on the renovations.

Anthracite's subcontract was to install a curtain wall on Building No. 2. The curtain wall is a new facade on the outside of the VA hospital, consisting primarily of a new window system. In the summer of 1995, before the completion of Anthracite's subcontract work. Bhandari declared Anthracite to be in default of its subcontract and made a demand on USF & G, under its bond, to complete Anthracite's subcontract work. USF & G accepted Bhandari's claim and contracted with Tip Top to complete the curtain wall work.

In the course of completing the project after Anthracite's default, USF & G and Bhandari had several disputes concerning the manner in which USF & G and Tip Top performed the work and concerning Bhandari's payments to USF & G. As a result of these disputes, USF & G brought a lawsuit in the federal district court in Connecticut against Bhandari and its surety, Fireman's Fund Insurance Company (hereinafter, "the USF & G/Bhandari action"). Bhandari counterclaimed against USF & G, filing an Answer, Affirmative Defenses, Counterclaim and Setoff dated October 15, 1999. USF & G's Mot. Sum. Jud. [Dkt. No. 86], Ex. 1 ("October 15, 1999 Answer"). In October 23, 2000, USF

---

**3.** The following recitation includes only those facts which are necessary to understand the court's ruling. It presents the facts in the light most favorable to the moving parties but explicitly notes any factual disputes. Notably, the parties seem to agree on nearly all factual questions relevant to the pending motions, except with respect to facts pertaining to the issue of causation and the question of which party's negligence caused Costin's injuries.

& G and Bhandari entered into a settlement agreement resolving issues raised by the USF & G/Bhandari action. *Id.*, Ex. 2 ("Settlement Agreement"). As part of the settlement, Bhandari executed a release, discharging USF & G of liability in connection with the USF & G/Bhandari action. *Id.*, Ex. 3 ("Specific Release"). Central among the issues disputed by the parties in connection with two of the pending motions is the scope of this release and its effect on USF & G's liability in this action.

On January 15, 1999, Barbara Costin was injured by falling ceiling tiles when part of the ceiling collapsed as she walked through a corridor of Building No. 2 of the VA hospital. Costin then filed suit. Although it is contested whose negligence, if any, caused the accident, it appears that water leaks, whatever their source, may have been at least part of the cause.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Hermes Int'l v. Lederer de Paris Fifth Ave. Inc.*, 219 F.3d 104, 107 (2d Cir.2000). The moving party bears the burden of showing that no genuine factual dispute exists. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir.2000) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994)). In assessing the record to determine if such issues exist, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir.1994). "Credibility deter-

minations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000).

Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, and present such evidence as would allow a jury to find in his favor, *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Lipton v. The Nature Company*, 71 F.3d 464, 469 (2d Cir.1995) (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986)). Additionally, a party may not rest on the "mere allegations or denials" contained in his pleadings. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995). *See also Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

## III. DISCUSSION

### A. *THIRD–PARTY DEFENDANT TIP TOP'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 89]*

In support of its motion for summary judgment, Tip Top first argues that Connecticut General Statutes § 52–572k, which prohibits "hold-harmless" clauses in

construction contracts under certain circumstances, bars the indemnification claims brought by USF & G, Bhandari, and Anthracite. Second, Tip Top argues that, under Connecticut law, the parties' failure to disclose in a timely manner the name of an expert who will testify with respect to the issue of causation warrants the entry of summary judgment in its favor because negligence cannot be established without expert testimony in this case. The court rejects both these arguments and denies Tip Top's motion for summary judgment.

### 1. *Applicability of Connecticut General Statutes Section 52–572k*

■ Section 52–572k of Connecticut General Statutes does not bar any of the indemnity claims brought by USF & G, Bhandari, or Anthracite. Section 52–572k, entitled "[h]old harmless clause against public policy in certain construction contracts," provides in relevant part:

> Any covenant, promise, agreement or understanding entered into in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of any building, structure or appurtenances thereto including moving, demolition and excavating connected therewith, that purports to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property caused by or resulting from the negligence of such promisee, such promisee's agents or employees, is against public policy and void, provided this section shall not affect the validi-

ty of any insurance contract, workers' compensation agreement or other agreement issued by a licensed insurer.

Conn. Gen. Stats. § 52–572k(a).[4] "The purpose of the statute is to nullify any provision in 'construction contracts' which grants immunity to either party for acts of negligence. Where negligence is concerned a party cannot by contract relieve itself of such liability." *Guild v. Exxon Corp.*, 81 F.Supp.2d 377, 380–81 (D.Conn. 1999) (citations to legislative history and case law omitted). Thus, the statute seeks to "declare void and against policy any agreement entered into in connection with a construction contract which relieves a person from liability ... resulting from his negligence." *Courter v. Becker*, No. CV 960537716S, 1998 WL 214668, *1 n. 2 (Conn.Super. April 27, 1998).

The court finds the "hold-harmless" clause in the subcontract between USF & G and Tip Top to be ambiguous with respect to the question of whether it seeks to indemnify USF & G for liability resulting from its own negligence in violation of Conn. Gen. Stats. § 52–572k(a). This contract states in pertinent part:

> Section 7: Indemnification. The Subcontractor further specifically obligates himself to the Surety in the following respects, to-wit: (a) To indemnify the Surety against and save him harmless from any and all claims, suits, liability, expense or damage for any alleged or actual infringement or violation of any patent or patent right, arising in connection with this Contract and anything done hereunder; (b) To indemnify the

---

4. In 2001, the Connecticut State Legislature amended the statute by substituting the word "negligence" for the words "sole negligence" and thereby broadened its reach. *See Parker v. Konover Constr. Corp.*, No. CV990090911S, 2003 WL 21675349, *6 n. 1 (Conn.Super. June 24, 2003). Bhandari claims that the statute bars only "construction contracts that purport to indemnify the indemnitee for its 'sole' negligence," Bhandari's Mem. Opp. MSJ [Dkt. No. 104], at 3, suggesting at oral argument that the statute should not be applied retroactively to this case. *See* discussion *infra* note 5.

Surety against and save him harmless from any and all claims, suits, or liability on account of any act or omission of the Subcontractor, or any of his officers, agents, employees or servants; (c) *To pay for all materials furnished and work and labor performed under this Contract, and to satisfy the Surety thereupon whenever demand is made, and to indemnify the Surety against and save them and the premises harmless from any and all claims, suit, or liens therefore by others than the Subcontractor;* (d) To obtain and pay for all permits, licenses, and official inspections made necessary by his work, and to comply with all laws, ordinances, and regulations bearing on his work and the conduct thereof; (e) The subcontractor warrants and guarantees the work and materials covered by this Contract and agrees to make good, at his own expense, any defect in materials or workmanship which may occur or develop prior to the Surety's release from responsibility to the Subcontractor.

And the Subcontractor shall indemnify the Surety against, and save them harmless from, any and all liability, loss, damage, costs, expenses and attorney's fees suffered or incurred on account of any breach of the aforesaid obligations and covenants, and any other provision of covenant of this Contract.

*See* USF & G's Mem. Opp. MSJ [Dkt. No.98], Ex. 1: "Contract Between Surety & Subcontractor," § 7, at 5–6 (emphasis added). With the exception of subsection (c), this section provides only that Tip Top shall be liable for specific, enumerated examples of its own negligence. However, the court finds the language of subsection (c) to be ambiguous. For example, although it would appear at first glance that

the word "them" refers to the Surety, the court notes that the Surety is referred to in the singular (e.g., "him"), in other parts of the subcontract, including the preceding two subsections.

Nevertheless, both in its memorandum to this court and at oral argument, USF & G has argued that this indemnification paragraph of the contract does not relieve USF & G of liability for harms caused by its own negligence. *See* USF & G's Mem. Opp. MSJ [Dkt. No.98], at 5 (stating without qualification that "th[is] indemnity provision does not purport to require Tip Top to indemnify USF & G for any liability arising from USF & G's own negligence."). In fact, at oral argument, counsel for USF & G conceded that, to the extent the indemnity provision sought to do so, it would violate section 52–572k(a).

Under the plain language of the statute, only the "covenant, promise, agreement or understanding entered into in connection with or collateral to a contract or agreement," Conn. Gen. Stats. § 52–572k(a), that is against public policy is void, but not the remainder of the construction contract, *cf. Guild,* 81 F.Supp.2d 377; *Courter,* 1998 WL 214668. Thus, given the ambiguity in subsection (c) of the contract's "hold-harmless" clause, the court concludes that, to the extent this indemnification clause purports to indemnify USF & G for liability resulting its own negligence, it is void. However, those indemnity provisions in the contract that seek simply to hold Tip Top liable for its own acts and omissions are valid under the statute. Accordingly, to the extent that there remains a genuine issue of material fact as to whether Tip Top was liable for the injuries that are at issue in this case, and to the extent that USF & G's contractual indemnification claim merely seeks to hold Tip Top liable

for its own acts and omissions under the contract, this claim survives Tip Top's motion for summary judgment.[5]

■ With respect to the implied indemnification claims against Tip Top, the plain language of the statute, in addition to its obvious purpose, makes clear that the prohibition does not apply to such claims, which include those brought by USG & F, Bhandari,[6] and Anthracite. With respect to these three claims for implied indemnification, Tip Top does not allege, nor does it raise a genuine issue of material fact, that there existed between it and these three parties "any covenant, promise, agreement or understanding," be it oral or written, "in connection with or collateral to a [construction] contract or agreement" purporting to indemnify them for their own acts of negligence. *Cf. Guild*, 81 F.Supp.2d at 380 (requiring that " 'hold-harmless' clause . . . arise out of a construction contract"); *see also Courter*, 1998 WL 214668, at *1. In fact, neither Bhandari nor Anthracite ever entered into any kind of agreement with Tip Top. Thus, Tip Top's motion for summary judgment must fail on this ground.

## 2. *Failure to Disclose Expert*

■ Tip Top also argues that summary judgment should enter in its favor because none of the parties has disclosed the name of any expert that will testify with respect to the issue of causation. The parties opposing the motion[7] suggest that Tip Top misapprehends Connecticut case law on this issue and that failure to produce an expert witness only warrants a grant of summary judgment when the question in dispute goes beyond the field of ordinary knowledge and experience of judges and jurors. They argue that this is not such a case.

Nearly all of the cases cited by Tip Top which allegedly support its claim in fact deal with highly technical questions of professional malpractice where Connecticut courts typically, but not always, require expert testimony. *See, e.g., Bonczkiewicz v. Merberg Wrecking Corp.*, 148 Conn. 573, 581, 172 A.2d 917 (1961) (in suit alleging failure to erect fence where blasting occurred to guard against injuries, concluding that "[t]he defendants' claim that expert testimony was required on this point is without merit" because "[n]o specialized

5. The court reserves, without deciding, the question of whether such liability arises if USF & G is negligent in part or in whole. The court does so in order to have the benefit of state court rulings issued before trial on whether the 2001 Amendment to section 52–572k is retroactive. Given the issues of fact that exist concerning the parties' alleged negligence, the ruling on the motion is not affected by this open question. *See* discussion *supra* note 4.

6. According to Tip Top, Bhandari's third-party complaint, which Tip Top suggests is dated May 23, 2001, asserts claims of both "common law and contractual indemnity" against Tip Top. Tip Top's Memo. Sup. MSJ [Dkt. No. 90], at 3. In fact, Bhandari's Third–Party Complaint, which is actually dated May 15, 2001, does not allege contractual indemnification. *See* Third–Party Complaint [Dkt. No. 17], Fifth Count (Implied Indemnity—Tip

Top), at 7–8. Moreover, Bhandari has responded in its papers and at oral argument that its "claim against Tip Top is not based upon a written or oral contract, but rather upon implied indemnification." Bhandari's Mem. Opp. MSJ [Dkt. No. 104], at 3. Thus, the court does not address a contractual indemnification claim by Bhandari.

7. Tip Top's brief asserts that "no factual dispute with regard to the issue of negligence against this defendant as *all parties* have failed to timely disclose expert testimony regarding the cause of the subject accident" and that it therefore moves for summary judgment with respect to "all claims asserted against it in this matter." Motion for Summary Judgment, [Dkt. No. 89] at 2 (emphasis added). However, only USF & G, Bhandari, and Anthracite have filed memoranda in opposition; Plaintiff Costin has not responded.

knowledge was needed."); *Sherman v. Bristol Hospital, Inc.,* 79 Conn.App. 78, 89, 828 A.2d 1260 (Conn.App.2003) ("Expert medical testimony is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is not generally within the sphere of the common knowledge of the lay person.... Expert medical opinion evidence is generally required in all cases involving professional competence and malpractice...."); *Esposito v. Shell Oil Co.,* No. X01CV970159182S, 2001 WL 1467220, *2 (Conn.Super. Nov. 5, 2001) ("Except where an act or omission so clearly departs from the standard of care that no expert testimony is needed, a party claiming professional malpractice must present expert testimony to prove lack of compliance with the standard of care."); *Somers Mill Assocs., Inc. v. Fuss & O'Neill, Inc.,* X03CV000503944, 2002 WL 467910, *4 (Conn.Super. March 5, 2002) ("Where the exercise of proper professional skill and care is in issue, expert testimony tending to establish the want of such skill and care is essential to recovery."). In cases involving general negligence, such as this one, expert testimony is not needed unless the factual question at issue is "not within the sphere of common knowledge of the lay person." *Sherman,* 79 Conn.App. at 88, 828 A.2d 1260. *See also Bader v. United Orthodox Synagogue,* 148 Conn. 449, 454, 172 A.2d 192 (1961); *King v. New Haven Trap Rock Co.,* 146 Conn. 482, 483–84, 152 A.2d 503 (1959); *Vaccarelli v. Ford Motor Co.,* No. CV990153308, 2001 WL 862643, *5 (Conn.Super. July 6, 2001).

The parties opposing Tip Top's motion claim the issue of causation in this case is not beyond the field of ordinary knowledge and experience of a jury. Judging from Bhandari's Exhibit C, which is attached to its Memorandum of Law In Support of Objection to Motion for Summary Judgment [Dkt. No. 104] and the many exhibits attached to Anthracite's Memorandum of Law in Opposition to Tip Top's Motion for Summary Judgment [Dkt. No. 110], the issue of causation appears capable of being proven without the use of an expert. Because Tip Top has failed to show otherwise, the court denies Tip Top's motion for summary judgment in this regard.

**B. THIRD–PARTY DEFENDANT USF & G'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

■ USF & G moves for summary judgment on the two counts in Bhandari's Third–Party Complaint against it, which counts allege contractual and implied indemnity. USF & G argues primarily that Bhandari executed a release in favor of USF & G, which specifically discharges it from any duty to indemnify Bhandari for negligent acts in connection with the project. Bhandari responds that neither the release nor the settlement agreement between the parties in the USF & G/Bhandari action encompassed the personal injury claims at issue in this suit.[8] Because Bhandari has raised a genuine issue of material fact concerning the scope of the release, the court denies USF & G's motion on this issue.

At the outset, the court notes that USF & G did not present it with all the documentation relevant to this question, specifically one of the pleadings referred to in the release in defining its scope. The

---

**8.** In their memoranda and at oral argument, USF & G and Bhandari agree that New York law governs the interpretation of the settlement agreement and the release. *See* USF & G's Mem. Supp MSJ [Dkt. No. 87], at 7 n. 3; Bhandari's Mem. Opp. MSJ [Dkt. No. 107], at 4 n. 1.

Specific Release signed by USF & G and Bhandari discharges USF & G as well as "its officers, directors, employees, agents, insurers, successors, assigns, and representatives" of "any and all liability whatsoever in connection with":

> [a]ll matters and claims alleged in, or in anyway related to the allegations in the Counterclaim and Setoff (collectively, "Counterclaim and Setoff") contained within a certain Answer, Affirmative Defenses, Counterclaim and Setoff dated October 15, 1999, and Bhandari's proposed Amended Answer, Affirmative Defenses, Counterclaim and Set–Off dated March 22, 2000, filed by Bhandari in [the USF & G/Bhandari action]... in connection with work on project known as Exterior Window Replacement and Installation of Curtain Wall System Building 2 ..., or upon or by reason of any matter, claim, cause or thing in connection with the foregoing, from the beginning of the world to and including the date of June 20, 2000.[9]

USF & G's Mem. Supp. MSJ, Ex. 3: Specific Release ¶ 1. Thus, the release specifically incorporates by reference two documents filed in the USF & G/Bhandari action: one dated October 15, 1999 entitled "Answer, Affirmative Defenses, Counterclaim and Setoff" ("October 15, 1999 Answer") and another dated March 22, 2000, which was Bhandari's proposed Amended Answer, Affirmative Defenses, Counterclaim and Set–Off. The court does not have before it the second of these documents, which is relevant in ascertaining the scope of the release and the extent of USF & G's liability to Bhandari. Moreover, in examining the document that was provided, the October 15, 1999 Answer, the court found it to be incomplete. It incorporates by reference various allegations found in the responsive complaint filed by USF & G in the USF & G/Bhandari action, but this complaint is also not before the court.

Even ignoring these documentary gaps, the court concludes that the release is not clear and unambiguous on its face. In extremely broad terms, the first paragraph releases USF & G from "any and all liability whatsoever in connection with" "[a]ll matters and claims alleged in, or in any way related to the allegations in the Counterclaim and Setoff ...." Specific Release ¶ 1. In contrast, the language in the following paragraph is considerably more restrictive: "It is the specific intention of this document to release USF & G from any and all liability in connection with the above-referenced Counterclaim and Setoff. This is NOT a general release." *Id.* ¶ 2. Standing alone, the language from paragraph 1 suggests that USF & G may well have been absolved of liability in this case because it is a "matter" "related to the allegations" in USF & G/Bhandari action. Indeed, the factual allegations of negligence in both cases are strikingly similar. However, viewing the language from paragraph two leads to a contrary conclusion because the USF & G/Bhandari action did not encompass personal injury "liability."

In light of this facial ambiguity with respect to the meaning of the specific release, the court may look to extrinsic evidence to interpret the release. See, e.g., finch. Pruyn & Co. v. M. Wilson Control Servs., 239 A.D.2d 814, 658 N.Y.S.2d 496, 499–500 (1997) ("Inasmuch as that [contract] term is reasonably susceptible of more than one interpretation, we may consider extrinsic and parol evidence pertaining to the degree of plaintiff's control.") (internal citation omitted); *cf. W.W.W. Assoc., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 566 N.E.2d 639

---

**9.** The accident at issue in this litigation took place on January 15, 1999.

(1990) ("When parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms. Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing."). Bhandari supplies the court with two affidavits, one from the Bhandari's Vice President and another from Bhandari's attorney in the USF & G/Bhandari action. *See* Bhandari's Mem. Opp. MSJ [Dkt. No. 107], "Resig Exhibit" and "Caffrey Exhibit." Both affiants state their personal understanding that the release was not intended to relieve USF & G of liability for personal injury claims arising from defective work by USF & G or Tip Top. In support of its motion, USF & G submits no extrinsic or parole evidence to the contrary. In light of the foregoing, Bhandari has succeeded in creating a genuine issue of material fact as to whether the release relieved USF & G of liability in the matter before this court. Accordingly, the court denies USF & G's motion for summary judgment.

### C. *THIRD–PARTY DEFENDANT TIP TOP'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT [DKT. NO. 101]*

 Relying on USF & G's motion for summary judgment and its arguments concerning the effect of the release, Tip Top has filed a supplemental motion for summary judgment, arguing that the release also absolves it of liability as USF & G's "agent." In response, Bhandari suggests, that at a minimum, there exists a genuine issue of material fact as to whether Tip Top acted as USF & G's agent, rather than as an independent contractor. The court agrees with Bhandari and notes that the unresolved issues of material fact with respect to the scope of the release provides a further ground for the denial of Tip Top's supplemental motion. Tip Top's supplemental motion for summary judgment with respect to Bhandari's implied indemnity claim is therefore denied.

## CONCLUSION

For the foregoing reasons, Third–Party Defendant Tip Top General Contracting & Guaranty Company's Motion for Summary Judgment [Dkt. No. 89], Third Party Defendant United States Fidelity & Guaranty Co.'s Motion for Summary Judgment [Dkt. No. 86], and Third–Party Defendant Tip Top General Contracting & Guaranty Company's Supplemental Motion for Summary Judgment [Dkt. No.101] are DENIED.

**SO ORDERED.**