## MARSHA GORDON *v.* MACELLIS K. GLASS ET AL.
## (AC 21125)

Foti, Landau and Dranginis, Js.

Submitted on briefs September 12—officially released November 13, 2001

*Norman A. Pattis* filed a brief for the appellant (plaintiff).

*Garie J. Mulcahey* and *Heidi M. Priwall* filed a brief for the appellee (named defendant).

*Augustus R. Southworth III* and *Leslie Gold McPadden* filed a brief for the appellees (defendant Orthopedic Specialty Group, P.C., et al.).

*Opinion*

PER CURIAM. The plaintiff, Marsha Gordon, appeals from the judgment of the trial court granting the defendants'[1] motions for summary judgment. In her appeal, the plaintiff claims that the court (1) improperly failed to construe the evidence in the light most favorable to her as the nonmoving party and (2) improperly concluded that she had failed to present sufficient evidence on the issue of proximate cause. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of the issues raised in the plaintiff's appeal. The plaintiff is a nurse. She was hired by Silver Hill Hospital in New Canaan in the spring of 1994. On July 6, 1994, she fell while walking on some outdoor steps at work. In her fall, she suffered injuries to her left ankle, elbow and foot, as well as pain on her left side, including her neck. She visited the defendant physicians Herbert I. Hermele and Robert A. Stanton for treatment following the fall. They were aware of her history of cervical intervertebral disc disease. Both physicians are board certified orthopedic surgeons practicing as members of the defendant Orthopedic Specialty Group, P.C.

The defendants cleared the plaintiff to return to work on August 1, 1994, in a "light duty" capacity. On August 11, 1994, while doing a stretching exercise while seated in a chair, she lost her balance and fell out of the chair, reinjuring her neck and left ankle. Upon examination on August 18, 1994, Stanton diagnosed her as having an acute cervical strain and a sprain of her left ankle. No X rays were ordered at that time.

On August 26, 1994, the plaintiff returned to work and experienced substantial difficulties in performing

---

[1] In addition to the named defendant, MacEllis K. Glass, the defendants are Herbert I. Hermele, Robert A. Stanton and Orthopedic Specialty Group, P.C.

her job as a result of her neck pains. Upon reporting those difficulties to her employer, Silver Hill Hospital, it arranged for an independent medical examination by the defendant MacEllis K. Glass, which took place on August 31, 1994. Glass ordered X rays and, after reviewing them, pronounced the plaintiff fit to return to work on September 27, 1994.

Two weeks after returning to work, on October 12, 1994, Silver Hill Hospital terminated the plaintiff's employment because she was unable to perform all of her responsibilities. She subsequently arranged for a magnetic resonance imaging examination, which disclosed that she suffered from a disc protrusion and an intervertebral disc herniation.

The plaintiff thereafter brought an action for medical malpractice against the defendants. The defendants thereafter filed motions for summary judgment, contending that the plaintiff's medical expert was unable to testify about the circumstances of her job loss and that therefore the plaintiff could not prove a causal link between the defendant's alleged malpractice and the plaintiff's loss of employment. The court granted the defendants' motions. This appeal followed.

"Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . .

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [defendants] as a matter of law, our review is plenary and we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . On appeal, however, the burden is on the opposing party to demonstrate that the trial court's decision to grant the [movants'] summary judgment motion was clearly erroneous." (Internal quotation marks omitted.) *Trimel* v. *Lawrence & Memorial Hospital Rehabilitation Center*, 61 Conn. App. 353, 355–56, 764 A.2d 203, cert. granted on other grounds, 255 Conn. 948, 769 A.2d 64 (2001).

In her appeal, the plaintiff claims that the court improperly found that she had presented insufficient evidence to demonstrate that the defendants' negligence was the proximate cause of her loss of employment.[2] Specifically, the plaintiff claims that her medical expert's failure to testify about the relationship between the defendants' alleged malpractice and her job loss is not fatal to her claim because her case falls within an exception to the requirement for expert medical testimony. We disagree.

"In every professional malpractice action, the plaintiff is required to prove that (1) the defendant was obligated to conform to a recognized standard of care,

---

[2] The other issue raised by the plaintiff, namely, whether the court drew all inferences favorable to her from the documents submitted in opposition to the motions for summary judgment, is a subset of her claim regarding the court's finding on the issue of proximate cause. In her brief, the "undrawn" inferences she cites all relate to the issue of proximate cause. Accordingly, we treat the two issues together.

(2) the defendant deviated from that standard, (3) the plaintiff suffered some injury, and (4) the defendant's act in departing from the standard of care caused the plaintiff's injury. *Pisel* v. *Stamford Hospital*, 180 Conn. 314, 334–42, 430 A.2d 1 (1980); *LaBieniec* v. *Baker*, 11 Conn. App. 199, 202–203, 526 A.2d 1341 (1987). . . . No matter how negligent a party may have been, if his negligent act bears no relation to the injury, it is not actionable. *LaBieniec* v. *Baker*, supra, 206." *Shegog* v. *Zabrecky*, 36 Conn. App. 737, 744–45, 654 A.2d 771, cert. denied, 232 Conn. 922, 656 A.2d 670 (1995). The court in this case found the first three requirements to be satisfied; however, it concluded that the plaintiff had failed to show causation.

"Expert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person. *Aspiazu* v. *Orgera*, 205 Conn. 623, 631, 535 A.2d 338 (1987); *Collette* v. *Collette*, 177 Conn. 465, 471, 418 A.2d 891 (1979). Expert medical opinion evidence is generally required in all cases involving professional competence and malpractice. *Grody* v. *Tulin*, 170 Conn. 443, 449, 365 A.2d 1076 (1976); *Campbell* v. *Pommier*, 5 Conn. App. 29, 32, 496 A.2d 975 (1985). Where expert medical opinion evidence is required in a medical malpractice case, '[t]he causal relation between an injury and its later physical effects may be established by the direct opinion of a physician, by his deduction by the process of eliminating causes other than the traumatic agency, or by his opinion based upon a hypothetical question.' *Boland* v. *Vanderbilt*, 140 Conn. 520, 525, 102 A.2d 362 (1953). The expert opinion cannot rest on surmise or conjecture because the trier of fact must determine probable cause, not possible cause. *Aspiazu* v. *Orgera*, supra, 632; *Hammer* v. *Mount Sinai Hospital*, 25 Conn. App. 702, 718, 596

A.2d 1318, cert. denied, 220 Conn. 933, 599 A.2d 384 (1991). In other words, the expert opinion must be based on reasonable probabilities. *Struckman* v. *Burns*, 205 Conn. 542, 555, 534 A.2d 888 (1987)." *Shegog* v. *Zabrecky*, supra, 36 Conn. App. 745–46.

"There are three exceptions to the necessity of obtaining expert testimony to prove a plaintiff's case in a medical malpractice action. Those exceptions are when the negligence is gross, when the medical condition is obvious and when the plaintiff's evidence of injury creates a probability so strong that a lay juror can form a reasonable belief. [Id., 746–47]. The court in this case concluded that none of the three exceptions for expert opinion cases obviated the necessity for an expert opinion. The court was correct in that conclusion." *Poulin* v. *Yasner*, 64 Conn. App. 730, 747, 781 A.2d 422, cert. denied, 258 Conn. 911, 782 A.2d 1245 (2001).

In this case, the alleged negligence lies in the defendants' judgment that it was appropriate for the plaintiff to return to work. The plaintiff presented no expert testimony as to her allegation that this judgment constituted negligence. Whatever else the defendants' judgment may have been, we agree with the trial court's determination in its memorandum of decision that it did not constitute "negligence so gross as to be clear to even a lay person." Thus, the only exception of which the plaintiff may avail herself to avoid the requirement of expert testimony is if "the plaintiff's evidence of injury creates a probability so strong that a lay juror can form a reasonable belief." Id. The evidence submitted by the plaintiff in opposition to the defendants' motions for summary judgment consisted only of her affidavit and that of her medical expert, who consistently stated that he *could not* offer the opinion that the defendants' malpractice caused the plaintiff's termination. We agree with the court's conclusion that this paucity of evidence on the plaintiff's side was not such as to "[create] a

probability so strong that a lay juror can form a reasonable belief"; id.; that the defendants' negligence caused the plaintiff's termination from her employment.

The judgment is affirmed.