WALTER SHERMAN ET AL. *v.* BRISTOL HOSPITAL, INC., ET AL.
(AC 23183)
Schaller, Dranginis and Hennessy, Js.

Argued March 26—officially released August 26, 2003

*Francis A. Miniter*, for the appellants (plaintiffs).

*Amy F. Goodusky*, for the appellees (defendants).

DRANGINIS, J. In this medical malpractice action, the plaintiff Walter Sherman[1] appeals from the summary judgment rendered by the trial court in favor of the defendants, Bristol Hospital, Inc. (hospital), and its agent, nurse Sharon Silva, after the court granted the defendants' motion in limine precluding the plaintiff's expert witness from testifying on the issue of causation. On appeal, the plaintiff claims that the court improperly (1) found that his expert witness was not qualified to testify as to the issue of causation, (2) refused to allow his expert witness to testify as to the issue of causation because, he claims, the court determined that her qualifications as to that issue related to the weight of her testimony and not its admissibility, (3) found that expert testimony by a physician was required to support causation and (4) concluded that the deposition testimony of the defendants' experts was insufficient to support a showing of causation.[2] We affirm the judgment of the trial court.

The relevant facts and procedural history are as follows. In 1995, the plaintiff learned that he required wrist fusion surgery. Prior to having the surgery, the plaintiff's general physician examined the plaintiff and concluded that although the plaintiff was obese and had a history

---

[1] Walter Sherman's wife, Carol Sherman, initially was a plaintiff also. She had alleged a claim for loss of consortium. Carol Sherman died, however, in March, 2002, and her husband was appointed administrator of her estate. Thereafter, Walter Sherman, executor, was substituted as a party plaintiff in place of his wife as to that claim. We therefore refer in this opinion to Walter Sherman as the plaintiff.

[2] The plaintiff also claims that the court improperly refused to allow him to use his expert witness' testimony in conjunction with the deposition testimony of the defendants' expert witnesses to prove causation. Because we conclude that the court properly determined that the plaintiff's expert was not qualified to testify as to causation and because we also conclude that the deposition testimony of the defendants' experts was insufficient to raise a genuine issue of material fact as to causation, we decline to address that claim.

of heart problems, he could safely submit to the surgery. On November 3, 1995, the plaintiff underwent the wrist fusion surgery at the hospital on an outpatient basis. Following the surgery, however, he was admitted to the medical-surgical ward of the hospital because of intense pain. To alleviate the plaintiff's pain, an agent of the hospital prescribed the drug morphine, which the plaintiff self-administered by means of a patient controlled analgesia machine.

Silva, an employee of the hospital, was assigned to care for the plaintiff during the late evening hours of November 3 and into the morning of November 4, 1995. When Silva checked on the plaintiff at approximately 4 a.m., she found him to be grayish in color and unresponsive. Silva summoned the physician on duty, who administered Narcan, a drug used to reverse the effects of morphine, to the plaintiff. Even after repeated doses of Narcan, however, the plaintiff's condition did not improve. The physician subsequently determined that the plaintiff had suffered a heart attack and had congestive heart failure.

Thereafter, the plaintiff instituted the present action against the defendants. In his complaint, filed June 22, 1998, the plaintiff alleged that the defendants knew or should have known that he was obese and had a history of heart problems, and that morphine has a depressive effect on the cardiac and pulmonary systems.[3] He further alleged that given the defendants' knowledge of those facts, the standard of care required that they monitor him much more frequently than they would other patients to assess the effect that the morphine was having on him. Finally, the plaintiff alleged that the defendants had failed to monitor him for a four hour period, which constituted a breach of the standard

---

[3] We note that the plaintiff did not allege that the defendants should not have prescribed morphine to him.

of care that caused him to suffer injuries. The defendants denied the allegations of the plaintiff's complaint.

In accordance with Practice Book § 13-4,[4] the plaintiff initially disclosed Sanford Lewis, a physician, as his expert witness. A short time before trial was scheduled to begin, the plaintiff learned that Lewis was unavailable to testify. Consequently, on January 14, 2002, the plaintiff filed a motion for permission to disclose Victoria O. Odesina, an advanced practice registered nurse, as his expert witness. The court granted that motion on February 11, 2002. Thereafter, the plaintiff disclosed that Odesina would be testifying as to the standard of care required by a nursing professional, that the defendants had breached that standard of care and that it was their breach that caused the plaintiff's injuries. On May 7, 2002, the defendants filed a motion in limine, asking the court to preclude Odesina from testifying on behalf of the plaintiff as to those issues.

A hearing was scheduled to resolve the motion in limine. The parties agreed that a favorable ruling on that motion would be determinative of whether the plaintiff could maintain his action. After a two day evidentiary hearing, the court, *Shortall, J.*, issued an order in which it concluded that although the plaintiff's proposed expert was qualified to testify as to the standard of care, the evidence presented by the plaintiff at the hearing did not demonstrate that Odesina possessed the experience or training that would qualify her to opine on the causation issues presented in this case. Accordingly, the court granted the defendants' motion

---

[4] Practice Book § 13-4 (1) (A) provides in relevant part: "A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. . . ."

in limine in part, thereby precluding Odesina from testifying as to the issue of causation.

Thereafter, the defendants filed a motion for summary judgment in which they contended that there were no genuine issues of material fact in dispute and that they were entitled to judgment as a matter of law because the plaintiff was unable to produce expert testimony as to causation. Along with their motion for summary judgment, the defendants submitted the court's order precluding Odesina from testifying on the issue of causation.

The plaintiff filed an objection to the defendants' motion for summary judgment. He argued that the defendants were not entitled to a summary judgment because there was a genuine issue of fact in dispute regarding causation. The plaintiff argued that he could produce expert testimony on the issue of causation by introducing at trial portions of the deposition testimony of the defendants' three expert witnesses and, therefore, there was a genuine issue of material fact as to whether the defendants had caused his injuries. In the alternative, the plaintiff argued that expert testimony was not necessary to establish causation in the present case because the case falls within numerous exceptions to the general rule that expert testimony is required to establish a cause of action for medical malpractice.[5] The plaintiff attached portions of the depositions of the defendants' three expert witnesses to his objection to the motion for summary judgment. The court granted the defendants' motion for summary judgment. This appeal followed.

---

[5] The plaintiff raised that argument in opposing the motion for summary judgment despite the fact that both the trial judge and opposing counsel recollect that he previously had conceded, during a pretrial conference, that if his expert's testimony was found to be inadmissible, he would not be able to prove his case.

The plaintiff raises numerous claims in his appeal. We will first address those claims that relate to the court's order on the motion in limine and then those claims that relate to summary judgment.

I

The plaintiff's first two claims relate to the defendants' motion in limine. Specifically, he argues that in partially granting the defendants' motion in limine, the court improperly (1) found that his expert witness was not qualified to testify as to the issue of causation and (2) refused to allow his expert witness to testify as to the issue of causation because, he claims, the court determined that her qualifications as to causation related to the weight of her testimony and not its admissibility. We address each of those claims in turn.

At the outset, we set forth the applicable standard of review. It is well established that "the trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed." (Internal quotation marks omitted.) *Doe* v. *Thames Valley Council for Community Action, Inc.*, 69 Conn. App. 850, 871–72, 797 A.2d 1146, cert. denied, 261 Conn. 906, 804 A.2d 212 (2002).

A

The plaintiff claims that the court abused its discretion in finding that his expert witness was not qualified to testify as to the issue of causation. Specifically, he argues that after having found that Odesina was qualified to testify as to the applicable standard of care and breach of that standard of care, the court logically could not find that she was not qualified to testify as to the issue of causation. In other words, he argues that an expert's qualifications to testify as to causation are inex-

tricably bound with her qualifications to testify as to the standard of care and breach of the standard of care. We are not persuaded.

First, we note that the plaintiff has failed to cite any legal authority in support of his claim that if the court determines that a medical expert is qualified to testify as to the standard of care and breach of the standard of care, the court must also conclude that the expert is qualified to testify on the issue of causation. We are unaware of any such authority.

Second, the test for admissibility of expert testimony involves, inter alia, a determination as to whether "the witness has a special skill or knowledge directly applicable to *a matter in issue* . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Francis D.*, 75 Conn. App. 1, 12–13, 815 A.2d 191, cert. denied, 263 Conn. 909, 819 A.2d 842 (2003). In the present case, the defendants challenged Odesina's qualifications to testify as to all three matters in issue, namely, (1) what was the applicable standard of care, (2) did the defendants breach that standard of care and (3) was the defendants' alleged breach the cause of the plaintiff's injuries. Accordingly, before permitting the expert to testify, the court properly made an independent assessment as to whether the witness, Odesina, possessed sufficient skill or knowledge to testify as to each of the matters in issue. See Conn. Code Evid. §§ 1-3 (a) and 7-2; see also *Hayes* v. *Decker*, 263 Conn. 677, 683, 822 A.2d 228 (2003).

The court, therefore, did not abuse its discretion in precluding Odesina from testifying regarding the issue of causation, despite the fact that it did not preclude her from testifying as to the standard of care and the alleged breach of the standard of care.

B

The plaintiff next claims that the court abused its discretion in refusing to allow Odesina to testify as to

the issue of causation because, he claims, the court determined that her qualifications to testify as to that issue related to the weight of her testimony and not its admissibility. Specifically, he argues that the court concluded that Odesina was qualified to testify as "an expert witness in nursing" and, therefore, any further objections to her testimony related to the weight of her testimony, not its admissibility. We disagree.

The court may properly admit expert testimony only from a witness it has first determined to be qualified to testify on a particular matter. See, e.g., *Blanchard* v. *Bridgeport*, 190 Conn. 798, 808, 463 A.2d 553 (1983). It is true that *after* the court has determined that the witness possesses reasonable qualifications to testify on the question presented, any further objections to that expert's testimony relate to its weight, not its admissibility. *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 63, 717 A.2d 724 (1998). Here, however, the court did not determine that Odesina possessed the reasonable qualifications necessary to testify regarding the issue of causation. In asserting that the court held that Odesina was qualified to testify as "an expert witness in nursing," the plaintiff mischaracterizes the court's ruling. The court did not make a wholesale determination that Odesina was qualified to testify as "an expert in nursing." Instead, it concluded that Odesina was qualified to testify as to the standard of care.

Accordingly, we conclude that the court's determination that Odesina's testimony on the issue of causation was inadmissible because she was not qualified to testify as to that issue did not constitute an abuse of discretion.

## II

The plaintiff's final two claims relate to the defendants' motion for summary judgment. Specifically, he

argues that the court improperly concluded (1) that expert testimony by a physician was required to support causation in the present case and (2) that the deposition testimony of the defendants' experts was insufficient to support a showing of causation.

Before addressing the plaintiff's arguments, we first set forth the applicable standard of review of a court's ruling on a motion for summary judgment. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 450, 820 A.2d 258 (2003).

A

The plaintiff claims that the court improperly concluded that expert testimony by a physician was required to support causation. He argues that a nurse's expert testimony may be sufficient to prove medical malpractice in a nursing malpractice case. The plaintiff also argues that summary judgment was inappropriate here because this case falls within all three exceptions to the general rule that expert testimony is necessary to make out a case for medical malpractice.

We note that in support of their motion for summary judgment, the defendants submitted the court's order on their motion in limine. In that order, the court did not find that expert testimony by a physician was required to prove causation. On the contrary, the court determined that a nurse who possesses sufficient skills

or knowledge may be qualified to testify as to the issue of causation, but that the nurse in the present case did not possess such skills or knowledge. The court expressly stated: "Although the court agrees that a nurse . . . through specialized experience or training, might be very qualified to give testimony about medical causation; *Lesser* v. *St. Elizabeth Hospital,* 807 S.W.2d 657, 659 (Tex. Civ. App. 1991); the evidence here did not demonstrate such specialized experience or training on nurse Odesina's part as would qualify her to opine on the causation issues in this case." Furthermore, the record reveals that the court did not conclude that the defendants were entitled to summary judgment because the plaintiff failed to offer testimony from a physician on the issue of causation. The court concluded that the defendants were entitled to summary judgment because the expert witness that the plaintiff had disclosed was not qualified to testify on the issue of causation, an essential element of the medical malpractice claim.[6]

Additionally, we agree with the court that this case does not fall within any of the exceptions to the general rule that expert testimony on the issue of causation is required to maintain a claim for medical malpractice.

"Expert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person. . . . Expert medical opinion evidence is generally required in all cases

---

[6] "In every professional malpractice action, the plaintiff is required to prove that (1) the defendant was obligated to conform to a recognized standard of care, (2) the defendant deviated from that standard, (3) the plaintiff suffered some injury, and (4) the defendant's act in departing from the standard of care caused the plaintiff's injury. . . . No matter how negligent a party may have been, if his negligent act bears no relation to the injury, it is not actionable." (Citations omitted; internal quotation marks omitted.) *Gordon* v. *Glass,* 66 Conn. App. 852, 855–56, 785 A.2d 1220 (2001), cert. denied, 259 Conn. 909, 789 A.2d 994 (2002).

involving professional competence and malpractice. . . .

"An exception to the general rule with regard to expert medical opinion evidence is when the medical condition is obvious or common in everyday life. *State v. Orsini*, 155 Conn. 367, 372, 232 A.2d 907 (1967); see also *Parker v. Supermarkets General Corp.*, 36 Conn. App. 647, 652 A.2d 1047 (1995). Similarly, expert opinion may not be necessary as to causation of an injury or illness if the plaintiff's evidence creates a probability so strong that a lay jury can form a reasonable belief. *Gannon v. Kresge Co.*, 114 Conn. 36, 38, 157 A. 541 (1931). Expert opinion may also be excused in those cases where the professional negligence is so gross as to be clear even to a lay person. *Puro v. Henry*, 188 Conn. 301, 305, 449 A.2d 176 (1982); *Slimak v. Foster*, 106 Conn. 366, 370, 138 A. 153 (1927)." *Shegog v. Zabrecky*, 36 Conn. App. 737, 745–47, 654 A.2d 771, cert. denied, 232 Conn. 922, 656 A.2d 670 (1995).

In this case, the alleged negligence was that the defendants' failure to monitor the effect that the morphine was having on the plaintiff, who was obese and had a history of heart problems, caused him to suffer a heart attack and congestive heart failure. The effect that morphine might have on a patient with a heart condition is not an obvious one.

The evidence also did not create a probability that was so strong that a lay juror could form a reasonable belief about what caused the plaintiff's injuries. The plaintiff alleged that the morphine depressed his cardiac system, which, because it was left unchecked, caused him to suffer a heart attack and congestive heart failure. There was, however, evidence that even after Narcan was administered to counteract the effects of the morphine, the plaintiff's condition did not improve. Furthermore, the defendants denied that the plaintiff was

unattended for a four hour period, as he had alleged. Accordingly, as a matter of law, the evidence did not create a probability that was so strong that a lay juror could reasonably believe that the plaintiff's injuries were caused by the defendants' failure to monitor his intake of morphine. Finally, we conclude that this case does not fall within the realm of cases involving gross negligence. See *Puro* v. *Henry*, supra, 188 Conn. 308 (surgical needle left in abdomen of patient after hernia operation); *Slimak* v. *Foster*, supra, 106 Conn. 370–71 (piece of surgical instrument left in patient after nose operation).

B

Finally, the plaintiff claims that the court improperly concluded that the deposition testimony of the defendants' experts was insufficient to support a showing of causation. We disagree.

"[A]lthough the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 252, 819 A.2d 773 (2003).

After carefully reviewing the record, we conclude that none of the evidence submitted by the plaintiff, namely, the deposition testimony of the defendants' experts, discloses the existence of such an issue because none of the defendants' experts testified that the defendants' alleged negligence caused the plaintiff's injuries. This court has approved the grant of a summary judgment in a medical malpractice action when, as in this case, it is evident that the plaintiff will be unable to produce at trial an expert witness to testify regarding

an essential element of his case. See *Sullivan* v. *Yale-New Haven Hospital, Inc.*, 64 Conn. App. 750, 766, 785 A.2d 588 (2001).

We agree with the court that there were no genuine issues of material fact in dispute as to the issue of causation and that the defendants were entitled to judgment as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.