******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAY M. TYLER *v.* THOMAS J. TYLER ET AL.
(AC 36164)

DiPentima, C. J., and Lavine and Sheldon, Js.

*Argued March 5—officially released June 17, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Sommer, J.)

*Jay M. Tyler*, self-represented, the appellant
(plaintiff).

*Bruce D. Tyler*, self-represented, the appellant
(defendant and cross complaint plaintiff).

*Kathleen Eldergill*, with whom, on the brief, was
*Bruce S. Beck*, for the appellees (named defendant et
al.).

*Opinion*

DiPENTIMA, C. J. The self-represented plaintiff, Jay Tyler, and cross claim plaintiff, Bruce Tyler, appeal from the judgment of the trial court granting in part the motion for summary judgment filed by the defendants Thomas Tyler, Russell Tyler, John Tyler, and Richard Tatoian.[1] There are two claims on appeal. First, the plaintiffs claim that the court improperly rendered summary judgment on several counts asserted against Tatoian. Second, Jay Tyler claims that the court improperly rendered summary judgment on his counts seeking to modify the trust on the ground of undue influence. As to the first claim, the decision on the counts relating to Tatoian was not a final judgment, and we therefore dismiss that portion of the appeal. As to the second claim, we agree with Jay Tyler and reverse the judgment of the court.

This appeal pertains to an irrevocable trust executed by Ruth Tyler on October 8, 2004, for the benefit of her sons, John Tyler, Bruce Tyler, Thomas Tyler, Russell Tyler and Jay Tyler. The trust named Tatoian as trustee and provided for the termination of the trust upon Ruth Tyler's death, with the assets of the trust remaining after payment of various expenses to be distributed to her five sons in substantially equal shares. The trust specified, by reference to Ruth Tyler's will, that the shares allotted to the plaintiffs be reduced in accordance with the debt owed by each to Ruth Tyler. On April 1, 2010, Ruth Tyler died. Due to the value of the trust's assets and the amount of debt owed, Jay Tyler was not entitled to receive any money from the trust.[2]

The lengthy and convoluted procedural history of this appeal began on January 28, 2011, when Jay Tyler commenced an action contesting the trust and alleging, among other things, that Thomas Tyler had exerted undue influence over their mother.[3] Bruce Tyler, ostensibly a defendant in Jay Tyler's action, responded by admitting the allegations of undue influence and filing a cross complaint. The defendants denied Jay Tyler's allegations and pleaded several special defenses. After numerous motions, interlocutory rulings, and amendments to the pleadings, the action ultimately consisted of (1) two counts asserted by Jay Tyler seeking to modify the trust on the grounds of undue influence, conspiracy, and what the court characterized as "tortious interference with the expectancy of inheritance," and (2) several counts asserted by both Jay Tyler and Bruce Tyler against Tatoian for negligence and breach of various duties.

On April 15, 2013, the defendants filed a motion for summary judgment. The plaintiffs filed a joint objection. Both sides submitted affidavits and documentary evidence in support of their positions. The defendants also moved to strike certain portions of the plaintiffs'

affidavits and documentary evidence. In a memorandum of decision dated August 22, 2013, the court granted the defendants' motion to strike some of the evidence.

On the basis of the remaining evidence and memoranda, the court rendered summary judgment on those counts asserted by Jay Tyler seeking to modify the trust, concluding that there was no genuine issue of material fact as to the claim of undue influence and that the claims of conspiracy and tortious interference necessarily failed without a predicate finding of undue influence. The court also rendered summary judgment on all but one of the counts asserted by the plaintiffs against Tatoian, concluding that General Statutes § 45a-204 and the terms of the trust barred the claims based on Tatoian's failure to provide accountings and his alleged mismanagement of the trust.[4] The plaintiffs have appealed. Additional facts and procedural history will be set forth as necessary.

I

As a threshold matter, we consider whether the ruling from which the plaintiffs appeal constitutes a final judgment for the purposes of determining the subject matter jurisdiction of this court.[5] After oral argument, we invited the parties to submit supplemental briefing on this issue.[6] We conclude that the ruling constitutes a final judgment with respect to Thomas Tyler, John Tyler, and Russell Tyler, but not with respect to Tatoian.

"The jurisdiction of the appellate courts is restricted to appeals from judgments that are final. General Statutes §§ 51-197a and 52-263; Practice Book § [61-1] . . . . The policy concerns underlying the final judgment rule are to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level. . . . The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear." (Internal quotation marks omitted.) *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 793–94, 967 A.2d 1 (2009).

"A judgment that disposes of only a part of a complaint is not a final judgment . . . unless the partial judgment disposes of all causes of action against a particular party or parties; see Practice Book § 61-3; or if the trial court makes a written determination regarding the significance of the issues resolved by the judgment and the chief justice or chief judge of the court having appellate jurisdiction concurs. See Practice Book § 61-4 (a)." (Citation omitted; internal quotation marks omitted.) *Harnage* v. *Commissioner of Correction*, 141 Conn. App. 9, 13–14, 60 A.3d 308 (2013).

Here, the ruling from which the plaintiffs appeal was a partial judgment, as it did not dispose of the entire complaint or cross complaint. Nevertheless, the ruling

constitutes a final judgment with respect to Thomas Tyler, John Tyler and Russell Tyler, as it disposed of all the counts asserted against them. See Practice Book § 61-3. Accordingly, we have jurisdiction to consider the merits of Jay Tyler's claim on appeal relating to those defendants.

On the other hand, the court's ruling disposed of only a portion of the plaintiffs' counts asserted against Tatoian.[7] As the trial court did not make a written determination regarding the significance of the issues resolved by the judgment, neither of our rules of practice conferring final judgment status on a partial judgment applies with respect to Tatoian. Practice Book § 61-4. Furthermore, we are not persuaded by the plaintiffs' argument that the court's ruling is an appealable interlocutory order under *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). Accordingly, we dismiss the plaintiffs' appeal with respect to Tatoian for lack of subject matter jurisdiction.

II

We now consider the merits of Jay Tyler's claim that the court improperly rendered summary judgment on his counts seeking to have the trust modified. Jay Tyler argues that the court incorrectly concluded that there was no genuine issue of material fact with regard to whether Thomas Tyler exerted undue influence over Ruth Tyler. We agree.

We begin by setting forth the well established standard of review. "Pursuant to Practice Book § 17-49, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Such questions of law are subject to plenary appellate review. . . . In deciding whether the trial court properly determined that there was no genuine issue of material fact, we review the evidence in the light most favorable to the nonmoving party. . . .

"Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court . . . . It is frequently stated in Connecticut's case law that, pursuant to Practice Book §§ 17-45 and 17-46, a party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence

outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . A material fact is one that will make a difference in the result of the case." (Citations omitted; internal quotation marks omitted.) *Marut* v. *IndyMac Bank, FSB*, 132 Conn. App. 763, 767–68, 34 A.3d 439 (2012). Summary judgment is appropriate where no genuine issue of material fact exists, and the defendant is entitled to judgment as a matter of law, with respect to any one element that the plaintiff is required to prove in order to prevail at trial. See *Sherman* v. *Bristol Hospital, Inc.*, 79 Conn. App. 78, 90–91, 828 A.2d 1260 (2003) (summary judgment appropriate in medical malpractice action where no genuine issue of material fact existed as to essential element of causation); see also *Chase Manhattan Mortgage Corp.* v. *Machado*, 83 Conn. App. 183, 189–90, 850 A.2d 260 (2004) (summary judgment appropriate in fraud action where no genuine issue of material fact existed as to third essential element).

Guiding our analysis is the relevant law of undue influence. "Undue influence is the exercise of sufficient control over a person, whose acts are brought into question, in an attempt to destroy his [or her] free agency and constrain him [or her] to do something other than he [or she] would do under normal control. . . . It is stated generally that there are four elements of undue influence: (1) a person who is subject to influence; (2) an opportunity to exert undue influence; (3) a disposition to exert undue influence; and (4) a result indicating undue influence. . . . Relevant factors include age and physical and mental condition of the one alleged to have been influenced, whether he [or she] had independent or disinterested advice in the transaction . . . consideration or lack or inadequacy thereof for any contract made, necessities and distress of the person alleged to have been influenced, his [or her] predisposition to make the transfer in question, the extent of the transfer in relation to his [or her] whole worth . . . failure to provide for all of his [or her] children in case of a transfer to one of them, active solicitations and persuasions by the other party, and the relationship of the parties." (Citations omitted; internal quotation marks omitted.) *Pickman* v. *Pickman*, 6 Conn. App. 271, 275–76, 505 A.2d 4 (1986).

On appeal, the issue before us is whether the evidence submitted by the parties,[8] viewed in the light most favorable to Jay Tyler, demonstrates a genuine issue of material fact as to undue influence. In conducting a plenary review of the record, we are mindful that the elements of undue influence are typically questions for the jury. See *Salvatore* v. *Hayden*, 144 Conn. 437, 440, 133 A.2d 622 (1957) ("[u]nder proper instructions from the court, the questions of the mental capacity of a testator and undue influence present issues of fact"); see also *Hospital of Central Connecticut* v. *Neurosurgical Associates, P.C.*, 139 Conn. App. 778, 793, 57 A.3d 794 (2012) ("sum-

mary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated" [internal quotation marks omitted]). We also note that Connecticut courts have consistently held that circumstantial evidence is sufficient to support a finding of undue influence. See *Stanton* v. *Grigley*, 177 Conn. 558, 565, 418 A.2d 923 (1979) ("[w]here there is no direct evidence of influence, a factual foundation supportive of a reasonable inference that, but for the [defendant's] actions, the testator would have made a different disposition, is sufficient to sustain a finding of undue influence"); see also *Lancaster* v. *Bank of New York*, 147 Conn. 566, 573, 164 A.2d 392 (1960) ("[d]irect evidence of undue influence is often unavailable and is not indispensable").

The court concluded that there was no genuine issue of material fact as to three of the four elements of undue influence. Because Jay Tyler had the burden to prove all four of the elements, this conclusion prompted the court to render summary judgment. As they form the basis for the court's decision to grant summary judgment, we limit our plenary review to consideration of those three elements.[9] Reviewing the evidence in the light most favorable to Jay Tyler, we are persuaded that there is a genuine issue of material fact as to each.

First, we consider the evidence concerning the first element, a person subject to undue influence. Bruce Tyler's affidavit recounts specific examples regarding Ruth Tyler's state of mind during the relevant time period, such as her inability to remember selling a car to one of her sons and her submissiveness in being forced to sell the family farm. This is the type of circumstantial evidence from which a jury could reasonably infer that Ruth Tyler was susceptible to undue influence.

Next, we consider the evidence concerning the second element, the opportunity to exert undue influence. The affidavits of both Bruce Tyler and Thomas Tyler discuss Thomas Tyler's frequent contact with his mother throughout the relevant time period. This evidence is sufficient to support a finding that he had the opportunity to exert undue influence over his mother.

Finally, we consider the evidence concerning the fourth element, a result indicating undue influence. Here, the evidence of Ruth Tyler's previous will, contrasted with her current will and trust, demonstrates a stark difference between how her estate was previously to be distributed and the distribution scheme at the time of her death. These documents constitute sufficient evidence of a result indicating undue influence to warrant submission of the issue to the jury.

None of this is to say that a jury ultimately will be persuaded by the evidence submitted by Jay Tyler. But given that "[i]t is the [trier] [of fact's] exclusive province

to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony"; (internal quotation marks omitted) *Traggis* v. *Shawmut Bank Connecticut, N.A.*, 72 Conn. App. 251, 260, 805 A.2d 105, cert. denied, 262 Conn. 903, 810 A.2d 270 (2002); we conclude that summary judgment was not appropriate in this case.

The appeal is dismissed with respect to Richard Tatoian. The judgment is reversed as to Jay Tyler's counts seeking to modify the trust and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] As discussed in this opinion, Bruce Tyler is ostensibly a defendant in the action commenced by Jay Tyler. Bruce Tyler's cross complaint asserts claims only as to Tatoian. For the purpose of clarity in this opinion, we will refer to Bruce Tyler and Jay Tyler collectively as the plaintiffs, and will refer to Jay Tyler by name when discussing the allegations in the counts of his complaint that do not pertain to Tatoian.

We also note that James R. Mapplethorpe and Citigroup Global Markets, Inc., were named as defendants before the trial court, but are not parties to this appeal. We refer in this opinion to Thomas Tyler, Russell Tyler, John Tyler, and Tatoian collectively as the defendants.

[2] Under Ruth Tyler's previous will, each brother's share was to be calculated on the basis of his net worth, where the brother with the lowest net worth would receive payment until his net worth was equal to the net worth of the brother with the next lowest net worth, and so on. If this distribution scheme had been in effect at the time of Ruth Tyler's death, Jay Tyler allegedly would have received the lion's share of the estate.

[3] As originally pleaded, Jay Tyler also contested the validity of Ruth Tyler's will. On June 15, 2011, the court dismissed that portion of the action, along with several other counts, for being within the exclusive subject matter jurisdiction of the Probate Court. That decision is not a part of this appeal.

[4] Following the court's ruling, the plaintiffs filed motions to reargue. In a memorandum of decision dated September 19, 2013, the court granted in part the motions, vacating its order of summary judgment "as to the sole issue of the trustee's obligation to provide trust accounting to the remainder beneficiaries."

[5] This issue initially was raised by Tatoian in a motion to dismiss filed in this court pursuant to Practice Book § 61-4 (a). He later withdrew the motion "in the interests of bringing this matter to conclusion." As "[n]either the parties nor the trial court . . . can confer jurisdiction upon [an appellate] court"; (internal quotation marks omitted) *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 794, 967 A.2d 1 (2009); we nonetheless must make a preliminary jurisdictional determination. See id. ("[t]he right of appeal is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met" [internal quotation marks omitted]).

[6] The defendants declined the opportunity to submit a supplemental brief.

[7] Certain counts against Tatoian have since been resolved at trial.

[8] The defendants' evidence in support of their motion for summary judgment consisted of a copy of the trust agreement, a copy of Ruth Tyler's will, affidavits of the defendants, deposition testimony of the parties and of the manager of the assisted living facility where Ruth Tyler lived at time of the creation of the trust, and a mental status evaluation of Ruth Tyler conducted at that facility. Jay Tyler's evidence in opposition to the motion consisted of a copy of Ruth Tyler's previous will, affidavits of the plaintiffs and deposition testimony of Bruce Tyler.

The court refused to consider certain portions of the plaintiffs' affidavits because they were not based on personal knowledge. The court also refused to consider a letter and various newspaper clippings submitted by Jay Tyler because they were unauthenticated, contained hearsay statements and were irrelevant. Finally, the court chose to disregard a document that appeared to be Jay Tyler's answers to the defendants' interrogatories because the disregarded statements were not supported by specific facts. As the plaintiffs

have not challenged these determinations on appeal, we will take into account only that evidence considered by the court.

[9] The court determined that a genuine issue existed as to whether Thomas Tyler had a disposition to exert undue influence.

------------------------------