******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

JEFFREY F. GOSTYLA *v.* BRYAN CHAMBERS
(AC 38943)

Alvord, Keller and Lavery, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant for negligence
in connection with personal injuries he had sustained in a motor vehicle
collision, in which his vehicle was struck by a vehicle driven by the
defendant. In his answer, the defendant admitted that he acted negli-
gently, but left the plaintiff to his proof with regard to the issue of
causation. Prior to trial, the defendant disclosed a biomechanical engi-
neer, M, as an expert witness. The parties conducted a videotaped
deposition of M, and M testified, inter alia, that the motor vehicle acci-
dent was not, to a reasonable degree of scientific and biomechanical
certainty, the cause of the plaintiff's injuries. Thereafter, the trial court
denied the plaintiff's motion in limine to exclude the portion of M's
testimony in which M opined that the collision did not cause the plain-
tiff's injuries, and the videotaped deposition of M, including M's testi-
mony regarding causation, was played for the jury at trial. Following
the trial, the jury returned a verdict for the defendant. Subsequently,
the court denied the plaintiff's motion to set aside the verdict and
rendered judgment for the defendant in accordance with the jury's ver-
dict, from which the plaintiff appealed to this court. *Held*:

1. The trial court abused its discretion in admitting M's testimony concerning
   causation, as M's testimony that this specific plaintiff's injuries were
   not caused by the collision exceeded his expertise in biomechanics and
   should have been excluded: although M, as a biomechanical engineer,
   was qualified to provide his opinion as to the amount of force generated
   by the collision and the types of injuries likely to result from exposure
   to that amount of force, M was not a medical doctor, and he did not
   possess the reasonable qualifications required to offer a medical opinion
   regarding the cause of specific injuries to a particular plaintiff, which
   would have required the expertise and specialized training of a medical
   doctor; furthermore, the fact that M formulated his opinion in part
   through reviewing a subset of the plaintiff's medical records and other
   documents related to the accident did not alter the analysis because the
   record did not reflect that M possessed the medical training necessary to
   identify the plaintiff's individual tolerance level and preexisting medical
   conditions, both of which could have had an effect on what injuries
   resulted from the accident.

2. Although the trial court improperly admitted M's causation testimony,
   the plaintiff failed to provide this court with an adequate record to
   determine whether the admission of M's testimony was harmful; the
   plaintiff provided this court with only minimal excerpts from the trial
   proceedings, none of which contained the testimony of any witness
   other than M, the parties' summations, or the trial court's instructions
   to the jury, which precluded this court from evaluating the effect of the
   evidentiary impropriety in the context of the totality of the evidence
   adduced at trial.

Argued April 26—officially released September 19, 2017

*Procedural History*

Action to recover damages for personal injuries sus-
tained by the plaintiff as a result of the defendant's
alleged negligence, and for other relief, brought to the
Superior Court in the judicial district of Hartford, where
the court, *Elgo, J.*, denied the plaintiff's motion to pre-
clude certain evidence; thereafter, the matter was tried
to a jury; verdict for the defendant; subsequently, the
court denied the plaintiff's motion to set aside the ver-
dict and rendered judgment in accordance with the

verdict, from which the plaintiff appealed to this court. *Affirmed.*

*Martin McQuillan*, for the appellant (plaintiff).

*John W. Mills*, for the appellee (defendant).

*Opinion*

LAVERY, J. In this negligence action stemming from a motor vehicle collision, the plaintiff, Jeffrey F. Gostyla, appeals from the judgment of the trial court, rendered after a jury trial, in favor of the defendant, Bryan Chambers. The plaintiff claims that he is entitled to a new trial because the court improperly allowed one of the defendant's expert witnesses, a biomechanical engineer, to provide opinion testimony on a matter that went beyond the purview of his expertise in biomechanics, namely, whether the plaintiff's personal injuries were caused by the collision. Although we agree that the challenged testimony was improper, the plaintiff has not provided us with an adequate record to determine whether the error was harmful. Accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are pertinent to this appeal. In 2013, the plaintiff commenced this negligence action seeking compensatory damages for personal injuries he sustained as a result of a motor vehicle collision that occurred on May 19, 2011. In his amended complaint, the plaintiff alleged that he was operating his vehicle behind the defendant's dump truck when the defendant suddenly stopped and began driving his truck in reverse, colliding with the plaintiff's vehicle and pushing it several feet. The plaintiff further alleged that, as a result of the defendant's negligence, he sustained, inter alia, knee and hip injuries and a core muscle injury in his abdomen that required surgery.[1] In his answer, the defendant admitted that he acted negligently, but left the plaintiff to his proof with regard to the issue of causation.

Prior to trial, the defendant disclosed Calum McRae, a biomechanical engineer, as an expert witness. Because McRae would be unavailable to testify at trial, the parties conducted a videotaped deposition of him on July 24, 2015. The plaintiff did not object to McRae being considered an expert in the field of biomechanics. During his direct examination, McRae explained that biomechanical engineers use fundamental principles of physics and engineering to determine the amount of force necessary to cause certain kinds of injuries and whether a particular situation generated that level of force. McRae testified that, after reviewing a multitude of documents relevant to the plaintiff's injuries and the collision,[2] he was able to determine that the collision caused the plaintiff to experience, at the very most, a g-force of 2.3, slightly less than the force a person would experience from "sitting down quickly" in a chair. McRae admitted, however, that he was not qualified to contest the accuracy of the diagnoses of the plaintiff's injuries. The defendant's counsel then asked: "[B]ased upon a reasonable degree of scientific and biomechanical certainty, was the motor vehicle accident in question here today the cause of the [p]laintiff's injuries?" Over

the plaintiff's objection, McRae answered: "No, sir, it was not." During cross-examination, McRae admitted that he was not a medical doctor and did not have experience treating patients for injuries. When asked whether biomechanical engineers are not qualified to render medical opinions regarding the precise cause of a specific injury to a specific individual, McRae replied: "Well, sir, biomechanical engineers provide biomechanical opinions, not medical opinions, sir. And in that respect, they opine specifically on individuals."

Thereafter, the plaintiff filed a motion in limine seeking to exclude, inter alia, the portion of McRae's testimony in which he opined that the collision did not cause the plaintiff's injuries. The plaintiff asserted that McRae was not qualified to render such an opinion because he was not a medical doctor and did not have experience diagnosing or treating injuries. The court heard argument on the plaintiff's motion at a pretrial hearing on September 1, 2015. After ordering a brief recess to review, inter alia, the transcript of McRae's video deposition, the court ruled that McRae's causation testimony was admissible because it was "relevant for the purpose [for which] it [was] being offered," and was "not a medical opinion regarding causation, but one based on biomechanical engineering." The court also noted that the plaintiff's counsel had an opportunity to highlight McRae's purported lack of qualifications to opine on the issue of causation during cross-examination.

At trial, the defendant played McRae's video deposition for the jury, including the portion in which McRae opined that the plaintiff's injuries were not caused by the collision. Following the trial, the jury returned a verdict for the defendant. The court denied the plaintiff's motion to set aside the verdict and rendered a judgment for the defendant. This appeal followed.

The plaintiff claims that the court improperly admitted McRae's opinion testimony on the issue of causation because McRae, as a biomechanical engineer, was not qualified to render such an opinion. Although we conclude that the court abused its discretion in admitting McRae's causation testimony, the plaintiff is not entitled to a new trial because he has failed to provide us with an adequate record to determine whether the error had any effect on the outcome of the trial.

I

We begin by determining whether McRae's opinion testimony that the plaintiff's injuries were not caused by the collision was improperly admitted. "[T]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. . . . In determining whether there has been an abuse

of discretion, the ultimate issue is whether the court could reasonably conclude as it did."[3] (Internal quotation marks omitted.) *Vitali* v. *Southern New England Ear, Nose, Throat & Facial Plastic Surgery Group, LLP,* 153 Conn. App. 753, 756–57, 107 A.3d 422 (2014).

"Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . . [T]o render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion." (Internal quotation marks omitted.) *Weaver* v. *McKnight,* 313 Conn. 393, 405–406, 97 A.3d 920 (2014). "[I]f any reasonable qualifications can be established, the objection goes to the weight rather than to the admissibility of the evidence." (Internal quotation marks omitted.) Id., 408.

The plaintiff argues that, despite McRae's admitted qualifications to testify as an expert in biomechanical engineering, his opinion testimony about whether the collision caused the plaintiff's injuries was improper because it went beyond his expertise in biomechanics. It is well settled that trial courts have discretion to permit expert witnesses to render opinions as to certain matters but not others. See, e.g., *Sherman* v. *Bristol Hospital, Inc.,* 79 Conn. App. 78, 86, 828 A.2d 1260 (2003) (trial court did not abuse its discretion by concluding that expert was qualified to testify as to standard of care but not as to issue of causation). "[B]ecause a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields." *Nimely* v. *New York,* 414 F.3d 381, 399 n.13 (2d Cir. 2005). Therefore, "[t]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." (Internal quotation marks omitted.) *Smelser* v. *Norfolk Southern Railway Co.,* 105 F.3d 299, 305 (6th Cir. 1997).

Our research discloses no Connecticut authority addressing the qualifications of biomechanical engineers to render opinions on the issue of causation. Decisions from other courts, however, consistently have recognized that, although biomechanical engineers are qualified to testify about the amount of force generated by a collision and the likely effects of that force on the human body, they are not qualified to render opinions about whether a collision caused or contributed to a particular individual's specific injuries because they are not medical doctors. For instance, in *Smelser,* the Sixth Circuit Court of Appeals held that the trial court had improperly admitted opinion testimony from a biomechanical engineer regarding the causes of

the plaintiff's injuries, which purportedly stemmed from a motor vehicle accident, because such testimony went "beyond [his] expertise in biomechanics." Id., 305. The court concluded that the engineer was qualified to "[describe] the forces generated in the . . . collision, and [to testify] in general about the types of injuries those forces would generate." Id. As to specific causation, however, the court held that the engineer "is not a medical doctor who had reviewed [the plaintiff's] complete medical history, and his expertise in biomechanics did not qualify him to testify about the cause of [the plaintiff's] specific injuries." Id.; see also *Rodriguez* v. *Athenium House Corp.*, Docket No. 11 Civ. 5534 (LTS), 2013 WL 796321, *4 (S.D.N.Y. March 5, 2013) ("this district has held that biomechanical engineers are not qualified to testify as to whether [an] accident caused or contributed to any of [the] plaintiff's injuries, as this would amount to a medical opinion" [internal quotation marks omitted]); *Bowers* v. *Norfolk Southern Corp.*, 537 F. Supp. 2d 1343, 1377 (M.D. Ga. 2007) ("As a biomechanical engineer, he is qualified to render an opinion in this case as to general causation, but not as to specific causation. That is, [he] may testify as to the effect of locomotive vibration on the human body and the types of injuries that may result from exposure to various levels of vibration. However, he may not offer an opinion as to whether the vibration in [the] [p]laintiff's locomotive caused [the] [p]laintiff's injuries."), aff'd, 300 Fed. Appx. 700 (11th Cir. 2008); *Yarchak* v. *Trek Bicycle Corp.*, 208 F. Supp. 2d 470, 501 and n.14 (D.N.J. 2002) (admitting testimony from consultant on biomechanics in part because he "does not purport to offer testimony regarding the specific medical causation of the [p]laintiff's impotence," and agreeing that consultant would be unqualified to provide such testimony); *Combs* v. *Norfolk & Western Railway Co.*, 256 Va. 490, 496–97, 507 S.E.2d 355 (1998) (biomechanical engineer was "competent to render an opinion on the compression forces placed on [the plaintiff's] spine at the time of the incident," but not to state an opinion regarding "what factors cause a human disc to rupture and whether [the plaintiff's] twisting movement to catch the toilet could have ruptured his disc").

Under the circumstances of the present case and in light of the foregoing authorities, we conclude that the trial court abused its discretion in admitting McRae's causation testimony. As a biomechanical engineer, McRae was qualified to provide his opinion as to the amount of force generated by the May 19, 2011 collision and the types of injuries likely to result from exposure to that amount of force. His testimony that *this specific plaintiff's* injuries were not caused by the collision, however, exceeded his expertise in biomechanics and should have been excluded. Opinion testimony regarding the cause of specific injuries "requires the identification and diagnosis of a medical condition, which

demands the expertise and specialized training of a medical doctor." *Bowers* v. *Norfolk Southern Corp.*, supra, 537 F. Supp. 2d 1377. McRae's causation testimony was, therefore, a medical opinion, not a biomechanical one. Because, as he readily admitted, he was not a medical doctor and did not have experience diagnosing or treating injuries, he did not possess the "reasonable qualifications" required to offer such an opinion. See *Weaver* v. *McKnight*, supra, 313 Conn. 408.

That McRae formulated his opinion in part through reviewing a subset of the plaintiff's medical records and other documents related to the accident; see footnote 2 of this opinion; does not alter our analysis. Regardless of his access to these materials, the record does not reflect that he possessed the medical training necessary to identify the plaintiff's "individual . . . tolerance level and [preexisting] medical conditions," both of which "could have [had] an effect on what injuries result[ed] from [the] accident . . . ." *Smelser* v. *Norfolk Southern Railway Co.*, supra, 105 F.3d 305; see also *Day* v. *RM Trucking, Inc.*, Docket No. 3:11CV400-J-25 (HLA), 2012 WL 12906568, *1 (M.D. Fla. August 31, 2012) ("biomechanical engineers ordinarily are not permitted to give opinions about the precise cause of a specific injury" because they are not trained to "identify the different tolerance levels and preexisting medical conditions of individuals" [internal quotation marks omitted]). Accordingly, the trial court could not reasonably have concluded that McRae was qualified to testify about the cause of the plaintiff's injuries. The court abused its discretion in failing to exclude the testimony.

## II

Despite our conclusion that McRae's causation testimony was improperly admitted, the plaintiff is not entitled to a new trial because he has not provided us with an adequate record to evaluate whether the error was harmful. "[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result. . . . When judging the likely effect of such a trial court ruling, the reviewing court is constrained to make its determination on the basis of the printed record before it. . . . In the absence of a showing that the [improper ruling] would have affected the final result, its exclusion is harmless." (Internal quotation marks omitted.) *Desrosiers* v. *Henne*, 283 Conn. 361, 366, 926 A.2d 1024 (2007).

As the appellant in the present case, the plaintiff bore the burden of providing this court with an adequate record for review. See Practice Book § 61-10 (a). "[I]t is incumbent upon the appellant to take the necessary steps to sustain [her] burden of providing an adequate record for appellate review. . . . [A]n appellate tribu-

nal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court." (Internal quotation marks omitted.) *Chester* v. *Manis*, 150 Conn. App. 57, 61, 89 A.3d 1034 (2014).

The plaintiff has failed to meet this burden. He has provided this court with only three excerpts from the trial transcript: (1) the parties' arguments and the trial court's ruling on, inter alia, the plaintiff's motion in limine to exclude McRae's causation testimony; (2) the trial testimony from September 4, 2015, at which McRae's videotaped deposition was played for the jury; and (3) the parties' arguments on the plaintiff's motion to set aside the verdict. The plaintiff has failed to provide this court with the transcripts of any other witness' oral testimony and, other than the parties' arguments in their briefs, there is no indication which witnesses testified at trial. In support of their arguments on the issue of harmful error, the parties rely on, inter alia, the testimony from the following additional witnesses who evidently testified at trial: (1) the plaintiff; (2) William Meyers, the plaintiff's treating physician, who supposedly testified that the plaintiff's core muscle injury was caused by the accident; (3) Christopher Lena, the plaintiff's other treating physician, who the plaintiff claims testified that his knee and hip injuries were caused by the accident; and (4) Alan Daniels, the defendant's medical expert, who purportedly testified that the plaintiff's core muscle injury was not caused by the accident.[4] The plaintiff has not provided us with transcripts of the oral testimony provided by any of these witnesses.[5] Nor have we been provided with transcripts of the parties' summations or the trial court's instructions to the jury.

Without these materials, it is impossible for us to "evaluate the effect of the evidentiary impropriety in the context of the totality of the evidence adduced at trial."[6] (Internal quotation marks omitted.) *Hayes* v. *Camel*, 283 Conn. 475, 489, 927 A.2d 880 (2007); see *Desrosiers* v. *Henne*, supra, 283 Conn. 367–68; *Ryan Transportation, Inc.* v. *M & G Associates*, 266 Conn. 520, 531, 832 A.2d 1180 (2003); *Chester* v. *Manis*, supra, 150 Conn. App. 62–63. Accordingly, the plaintiff has failed to provide us with an adequate record to determine whether the admission of McRae's causation testimony was harmful, and we decline to order a new trial.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] More particularly, the plaintiff's injuries included (1) a freeing of the anterior superior acetabular labrum and incomplete attachment of the ligamentum teres in his left hip, (2) a meniscal tear in his left knee, and (3) tears of the rectus abdominis and abductor longus in his left groin area.

[2] Specifically, McRae testified that he reviewed the plaintiff's medical records, the police and accident reports showing minimal damage to the plaintiff's vehicle, the characteristics of the plaintiff and the vehicles involved

in the collision, the position of the plaintiff's body within his vehicle at the time of the collision, and other relevant facts revealed by the plaintiff's deposition testimony and responses to discovery requests.

[3] The plaintiff incorrectly asserts that a plenary standard of review applies to his claim. "To the extent a trial court's admission of evidence is based on an interpretation of the Code of Evidence, [the] standard of [appellate] review is plenary. . . . [On the other hand, an appellate court] review[s] the trial court's decision to admit evidence, if premised on a correct view of the law . . . for an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Wright*, 107 Conn. App. 85, 88–89, 943 A.2d 1159, cert. denied, 287 Conn. 914, 950 A.2d 1291 (2008). The court's ruling that McRae's causation testimony was admissible turned on whether McRae was qualified to provide that testimony, rather than on an interpretation of the Code of Evidence. Accordingly, the abuse of discretion standard applies.

[4] The appendix filed in support of the defendant's brief includes the transcript of Daniels' videotaped deposition, but not the excerpt of the *trial transcript* in which the deposition was played for the jury. In any event, even if we were to assume that the deposition transcript accurately reflects the testimony played for the jury, the record would still be inadequate to evaluate whether the evidentiary error was harmful.

[5] The fact that these expert medical witnesses completed reports that were admitted into evidence as exhibits does not cure this problem. We have no way of knowing the extent to which their reports were consistent with their testimony at trial. Moreover, the findings recorded in the reports do not reflect what was elicited from those witnesses during cross-examination.

[6] Ordinarily, an analysis of the likely impact of an evidentiary impropriety on the outcome of a trial "includes a review of: (1) the relationship of the improper evidence to the central issues in the case, particularly as highlighted by the parties' summations; (2) whether the trial court took any measures, such as corrective instructions, that might mitigate the effect of the evidentiary impropriety; and (3) whether the improperly admitted evidence is merely cumulative of other validly admitted testimony. . . . The overriding question is whether the trial court's improper ruling affected the jury's perception of the remaining evidence." (Citations omitted; internal quotation marks omitted.) *Hayes* v. *Camel*, 283 Conn. 475, 489–90, 927 A.2d 880 (2007).

---